Tatum v. State.

---

## JOHN TATUM V. STATE OF NEBRASKA

FILED JANUARY 23, 1901. No. 11,238.

1. **Continuance: SHOWING.** In an application for a continuance, where no reasonable probability exists of procuring the proposed evidence, which is that of unknown persons, or where it is shown that due diligence and seasonable effort have not been made to procure such evidence, the application for a continuance is properly overruled.

2. **Witness: IMPEACHMENT.** Where a witness for the defense in a criminal prosecution has testified to facts inconsistent with and contradictory to statements made by such witness prior thereto, and regarding matters material to the issues in the case, such inconsistent and contradictory statements may be proven on rebuttal for the purpose of affecting the credibility of such witness, the proper foundation having first been laid.

3. **Misconduct of Counsel: STRICTURES ON WITNESS.** Strictures by counsel of a witness for the defense held to be of a character warranted by the evidence, and that such argument was not misconduct upon which prejudicial error could be predicated.

4. **Instructions: CIRCUMSTANTIAL EVIDENCE.** Instructions to the jury examined, and held to embody the rule of law that circumstantial evidence, to justify a conviction, must be of such a character as to exclude every reasonable hypothesis save that of the guilt of the accused.

5. **Evidence.** Evidence examined, and *held* to support the verdict of the jury and the judgment rendered thereon.

ERROR from the district court for Buffalo county. Tried below before SULLIVAN, J. *Affirmed.*

*Hamer & Hamer* and *Norris Brown,* for plaintiff in error.

*Constantine J. Smyth, Attorney General, Willis D. Oldham, Deputy,* and *Fred A. Nye, contra.*

HOLCOMB, J.

The defendant, plaintiff in error, was informed against and convicted of the crime of horse stealing at the January, 1900, term of the district court of Buffalo county. Just preceding the trial different applications were made by the defendant for a continuance of the cause, which were overruled. The ruling thereon is assigned as error.

It appears from the record that after a preliminary examination an information was filed in the district court, at the September, 1899, term, charging the defendant with the crime mentioned, to which, upon arraignment, he entered a plea of not guilty, and the cause was thereupon continued until the next term, which convened November 20, the defendant entering into a recognizance for his appearance at such time to answer the charge preferred against him. At the November term, and on the 22d of the month, the defendant presented a motion, supported by affidavit, for a continuance until the next regular term, for the purpose of making preparation for trial, and procuring evidence alleged to be material for his defense. The application was granted and the cause continued until the next term. The next regular term convened on January 29, 1900, at which time another motion was presented by defendant for a further continuance, which was overruled and the case set for hearing on the 31st. On that day yet another motion for a continuance was filed, which was also overruled, and the case proceeded to trial.

In the application for a continuance, at the beginning of the term at which the trial was had, the reasons assigned therefor were that the defendant had not prepared for trial because accumulated business of his counsel had prevented the necessary steps to secure evidence material in the case and necessary to a proper hearing thereof, and that the term of court had been called earlier than was anticipated. The proposed evidence was that of unknown persons, and the probability of procuring it was

extremely indefinite and uncertain. The witnesses from whom the proposed evidence was to be had were to be found and their testimony procured after a trip was made to St. Louis, Missouri, where it is claimed a car load of horses was shipped, in which shipment, according to the theory of the state, were included the two horses alleged to have been stolen by the defendant. The proposed evidence, when discovered, was for the purpose of disproving the shipment of any horses answering the description of those alleged to have been stolen. In the showing for a continuance it was stated that the defendant could not prove what horses were received by the consignees except by the consignees themselves; but there was omitted all reference to any evidence, which might be procured, showing what horses were in fact loaded into the car at the place of shipment, in the county adjoining that in which the larceny was committed. By the record it is disclosed this testimony was procurable, and was introduced by the defendant for the purpose of establishing the same fact it was proposed to prove by the unknown consignees of the shipment. It also appears that no effort was made, prior to the time of the application for a continuance, to procure the testimony spoken of. The application was clearly insufficient and failed to state any of the essential requirements of diligence, materiality of evidence, and reasonable probability of procuring it from the sources relied on. It is also quite apparent that testimony of the same character, pertaining to the same alleged facts, was procurable from those having knowledge of the shipment from the place where made, and near the place where the alleged offense was committed, to procure which no effort appears to have been made at that time. Upon the overruling of the application subpoenas were issued, at defendant's request, for different witnesses to appear and testify in his behalf. The subpoenas were served on some and returned not found as to others. On the day set for trial, another application for a continuance was presented on

the ground of the absence of the witnesses not found. As to the last application, it was presented out of season, and there is an utter lack of diligence shown. The ruling thereon was proper. A perusal of the record does not impress us that diligence or reasonable effort was made to procure the presence of the witnesses whose absence is made the basis for the application. They all resided at points convenient to the place of trial, and a seasonable effort to procure their attendance would no doubt have been successful.

Many objections are made and exceptions taken to the introduction of testimony on the trial of the case. It will be unprofitable to note and discuss the objections in detail. We have carefully examined the record, and find no prejudicial error in the admission or rejection of the testimony.

Strenuous complaint is made because of certain impeaching evidence admitted to contradict a witness for the defense. It is urged that the contradiction is upon an immaterial point, and, therefore, the evidence was improperly and erroneously admitted. The property alleged to have been stolen consisted of two mares belonging to an uncle of the defendant, residing in the city of Kearney, Buffalo county. The theft was alleged to have occurred on the night of the 31st of March, 1899. This was Friday night. The theory of the state is that the horses were taken by the accused on the night mentioned from the stable of the owner and led by him behind a team and buggy, which he drove to the town of Minden, about twenty miles distant, and there disposed of to one Watt, who, on the Sunday following, shipped them with a car load of horses out of the state. The state offered evidence, which, if believed by the jury, as they evidently did and were justified in doing so, tended to show that the two mares were by the defendant taken from the stable on the night mentioned, and to the livery barn of the said Watt at Minden, and at the request of the accused, taken to a stall in the back part of the barn. By

one witness the property was clearly and accurately described as the two mares claimed to have been stolen. The horses were brought to the barn about midnight. The owner of the barn was called from his house, and he and the accused had a conversation of some duration, during which he claims to have purchased the horses. After this the accused, with the same team with which he had driven to Minden, returned to Kearney, where he resided. On the next morning, being Saturday, at the direction of Watt, the team was taken from the livery barn and placed in the private barn of a resident of the town, where it remained until Sunday morning, when, with other horses, it was shipped out of the state. On the trial Watt was a witness for the defendant, and testified to the accused bringing a team to his place on the night mentioned; to his purchase of the same, and to his removal of them to a separate barn the next morning, and their shipment on the Sunday morning following. In describing the horses he purchased, he testified that one was a gelding and one was a mare. Over objection the state was permitted to ask the witness if he had not stated to the owner, who seems to have gone to Minden in search of his team on the Sunday afternoon of the day when the horses were shipped, that no mares were shipped in the car load that was shipped that day. He was also interrogated, over objections, as to whether or not, in a conversation with the county attorney, some time afterwards, in response to a question asking him if he had obtained any horses of the accused on the night of March 31, or within a week before or after that date, he had not stated, after making an examination of his books, that he had received no horses from the accused at the time mentioned, or within a week prior or subsequent thereto. The witness answering in the negative to both of the questions asked for the purpose of laying the foundation for impeachment, the state was permitted in rebuttal to contradict the witness as to the statements he denied having made. The case as made out by the

state was that the team was stolen by the accused, taken to Minden, disposed of to Watt, and by him shipped out of the state as before mentioned. If, after the happening of these events, assuming them to have happened, the witness was interrogated regarding the matter and made statements in regard thereto, and afterwards testified to matters contradictory to his former statements, and regarding a matter material to the case, as certainly was his statement with reference to his purchase and shipment of the horses obtained from the accused, and which the state charged were stolen, such contradictory statements may be shown for the purpose of affecting his credibility as a witness in the case. The testimony is not regarding an immaterial matter, but goes to the vital issues of the case and the very essence of the controversy. A denial by the witness of any dealings with the accused, or of having any animal of the same sex as those stolen, if untrue, is inconsistent with innocence and honesty on the part of the witness respecting the subject-matter of the controversy, and materially affects his credibility as a witness when testifying to yet another and different state of facts inconsistent with his previous statement. The rebutting testimony we regard as legitimate for the purpose of impeachment and as affecting the veracity of the witness. We find no error in the admission of the testimony thus objected to.

Complaint is also made regarding conduct of counsel for the state during the trial of the case. Many of the objections are clearly without merit. There is more or less controversy as to the alleged misconduct, which, upon the motion for a new trial, as a question of fact was determined adversely to the defense. Except where the record discloses to the contrary, this finding is presumably correct and will not be disturbed. We think the finding is justified by the record. We find no such misconduct as would warrant prejudicial error being predicated thereon. The conduct most objected to is the comment of counsel for the state regarding the evidence

of the witness Watt, who was alluded to in the sense of one having guilty knowledge of the property he purchased of the accused being stolen and of receiving it as such. The statements were based on the evidence, and it can not be said that they were outside of the record or not justified by the evidence. The strictures were, perhaps, severer than they should have been, yet their general character was such as brought them within the scope of legitimate argument of the testimony introduced in the trial of the case.

Objection is also made to certain instructions given the jury relative to the rule of law justifying a conviction of one accused of crime on circumstantial evidence. It is urged that the instructions omit the requirements of law, that the circumstantial evidence, to justify a conviction, shall be such as to exclude every reasonable hypothesis save that of the guilt of the accused. We think defendant's counsel in error in the position taken as to the scope and purport of the instructions excepted to. By instruction No. 5 the jury were told, in substance, that if they were satisfied beyond a reasonable doubt that a larceny of the horses was committed, as charged, and also believed from the evidence that the facts and circumstances concerning which the state had offered evidence are true, and if, from all the circumstances and facts proven connected with the commission of the alleged larceny, they are satisfied of the defendant's guilt beyond a reasonable doubt, it would be their duty to return a verdict accordingly; and by instruction No. 6 they were told that, in determining whether the defendant was guilty or innocent, they should take up and consider the testimony offered by the state as to each and all the facts concerning which it has offered evidence, and consider the evidence of the state as to each fact in connection with that of the defendant concerning the same fact; and if they are satisfied of the truth of the facts and circumstances concerning which the state has offered evidence, and are satisfied beyond a reasonable doubt, that some

one stole the horses at the time and place charged, and that the circumstances proven are consistent with the defendant's having committed the larceny and are such as to be inconsistent with any other reasonable hypothesis or conclusion, then the defendant should be found guilty. But if reasonable doubt is entertained as to any of the material circumstances, or as to whether any one stole the horses, or if the circumstances proven are consistent with defendant's innocence, or if, after considering all the evidence, a reasonable doubt is entertained of the defendant's guilt, they should acquit. In the two instructions all the essential elements of a conviction upon circumstantial evidence are embodied, and the instructions are in harmony with the rule as announced by this court in *Casey v. State*, 20 Nebr., 138; *Dreessen v. State*, 38 Nebr., 375; *Carleton v. State*, 43 Nebr., 373.

It is also objected that the evidence is insufficient to support the verdict and sentence rendered thereon, and that the *corpus delicti* is not proven. We regard the evidence as being quite convincing in its volume and character. That the property was stolen is abundantly shown by the evidence. That the defendant was found in possession of it on the night of the larceny is, we think, clearly proven, and the time and method adopted in disposing of it, all make a case of circumstantial evidence scarcely less potent and convincing than testimony direct and positive in its character.

The verdict is supported by the evidence, the defendant has been convicted by an observance of the forms and requirements of law, and the judgment should remain undisturbed, and is accordingly

AFFIRMED.