CLARENCE C. PORTER V. STATE OF NEBRASKA.

FILED FEBRUARY 16, 1922. No. 22109.

1. **Rape:** IDENTIFICATION OF ACCUSED: EVIDENCE. Evidence as to the identification of the defendant examined, and *held* sufficient to sustain the verdict.

2. **Criminal Law:** ADMISSION OF EVIDENCE. The admission as rebuttal evidence of a portion of a letter written by the defendant's wife to him and found in his possession, admitted on her cross-examination to have been written by her, and not relating to any matter material to the issues in the case, *held* to be error.

3. **Rape:** CORROBORATION: INSTRUCTION. Instruction numbered 7 examined, and *held*, in view of the defendant's testimony, to be erroneous.

4. **Criminal Law:** ERROR WITHOUT PREJUDICE. An examination of the entire record disclosing that no substantial miscarriage of justice actually occurred, *held* that the judgment will not be reversed because of the errors committed. Laws 1921, ch. 157.

ERROR to the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*R. J. Craren, Richard S. Horton* and *O. L. Jones,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *Charles S. Reed, contra.*

Heard before MORRISSEY, C.J., ALDRICH, FLANSBURG and ROSE, JJ., BROWN and ELDRED, District Judges.

BROWN, District Judge.

Clarence C. Porter, alias Frank Taylor, was convicted in the district court for Douglas County on a charge

of statutory rape on a little girl 13 years old, and was sentenced to serve a term of 15 years in the penitentiary. He has prosecuted error to this court, and in his brief urges three reasons why the judgment of the district court should be reversed.

The first proposition urged is that the evidence is insufficient to identify the plaintiff in error, who will hereafter be designated herein as the defendant, as the man who committed the rape charged. The witnesses identifying the defendant consisted of the little girl who was raped and two ladies who were driving in an automobile and saw a man drive a car across in front of them to the wrong side of the street, stop, hold a conversation with a little girl, and drive off with her, on the evening, at the place, and about the time that the prosecuting witness said the defendant picked her up. The description of the manner in which this man was dressed and his appearance, as given by the two ladies, tallies substantially with the description as given by the little girl upon the stand and as given by her to two men immediately after the assault, who were also witnesses on behalf of the state. The description of the defendant's dress on the evening in question, given by himself and his witnesses, does not differ materially from that given by the witnesses of the state. The defendant and his witnesses admitted that on said evening he was driving a seven-passenger Jeffery touring car, that had divided seats in front, a dark body and light colored wheels, and that, about the hour the witnesses for the state testified to, he drove along the street and in the direction of the point where they testified they met him. The women's description of the car that they saw and the little girl's description of the one she testified she rode in corresponded with that of the car that it is admitted the defendant was driving. After the defendant was returned from Canada, whither he had fled, the two ladies and the little girl each separately, without suggestion or assistance, promptly, unhesitating-

ly and unequivocally identified the defendant among a group of seven men in a cell at the county jail. From a painstaking examination of the entire record in the case, we are satisfied that the identification of the defendant is as complete and satisfactory as could be expected under the circumstances that existed, and that the evidence is amply sufficient to sustain the jury's finding that the defendant was the man who committed the rape charged.

The defendant further urges that the trial court committed prejudicial error in admitting in evidence over his objection a portion of a letter found in his possession in Canada, which had been written to him by Adeline West, the woman with whom he was living as his wife at the time of the commission of the offense charged. Adeline West, who passed as the defendant's wife, testified on direct examination that the defendant left Omaha for his father's home in Canada. Then followed these interrogatories and answers:

"Q. Did he tell you why he was going there? A. Yes. Q. Why? A. We were not legally married—we have been living together as man and wife, and we knew there was detectives looking for us, and they asked for Adeline West and C. C. Porter. I was the one that was afraid. My divorce was to come up the 20th and I wanted my divorce. It was me that got the scare, it wasn't Clarence, and I asked him to go, and I was standing in the hotel there and a man came in and I thought he was a detective, and I thought, when he asked the clerk for Mrs. Porter, that the clerk would say, 'There she is,' and I told Clarence to go away on up to his father's until I got my divorce, and then I was to follow him up there and we were to be married right away. That is why Mr. Porter left for Canada."

On cross-examination the assistant county attorney had her identify a letter, and particularly the portion in question, which portion was read to her in the presence of the jury over the defendant's objection, as

having been written by her to the defendant as Frank Taylor, on August 7, 1920, twenty days after he had departed for Canada. On rebuttal the state offered in evidence that portion of the letter previously embodied in its cross-examination, and reading as follows:

. "There is only one thing I don't want you to do, and that is get mixed up with any girl or woman for I am coming up on the first train after I sell the Jeffery and if you have been chasing around I will tell everybody why you had to leave the States."

To this offer the defendant duly objected. The objection was overruled and the portion of the letter offered admitted. We are unable to conceive upon what theory of law or rules of evidence the portion of the letter in question was admissible. Counsel for the state attempt to justify its admission on the theory that it was properly admissible for the purpose of impeaching the witness with respect to the direct testimony quoted above. The rule is, however, that even where a previous statement or writing is denied by a witness, if it is contradictory to the testimony of the witness, it can only be admitted when it relates to matters material to the issues in the case. *Tatum v. State,* 61 Neb. 229. The statement of a witness is deemed to be material if his answer "is of a nature that the cross-examining party would be allowed to give it in evidence." *Carter v. State,* 36 Neb. 481. Also, *Smith v. State,* 5 Neb. 181. In this case the witness admitted having written the letter. The letter was hearsay and could not have been introduced by the state to have established the guilt of the defendant. It was, therefore, clearly immaterial to the issues in the case and inadmissible for the purpose of impeachment.

The third contention of the defendant is that the court erred in giving instruction No. 7. This instruction, so far as material to our consideration, reads as follows: "You are instructed that where the accused has testified in the case and explicitly denies the accusa-

tion, if in your judgment you are of the opinion that the defendant in this instance has thus denied the accu-sation, there must be some testimony corroborating the prosecuting witness in order to warrant a conviction."

The portion to which exception is taken is the phrase, "if in your judgment you are of the opinion that the defendant in this instance has thus denied the accusa-tion." It is true that the defendant did not, upon the witness-stand, make a categorical denial of having com-mitted the offense charged. This fact probably led the learned trial judge inadvertently to incorporate this phrase in his instruction. The defendant had positively testified upon direct examination that he had never seen the prosecuting witness prior to her coming to the jail for the purpose of identifying him. This was tanta-mount to an explicit denial of the commission of the offense with which he stood charged. In the second instruction the jury were informed that the defendant had pleaded not guilty to the offense charged. No reas-onable juror could have doubted that the court intended to instruct the jury in this seventh instruction that the defendant had denied his guilt of the offense charged, and that the necessity for corroboration of the prose-cuting witness existed in this case.

The witnesses on behalf of the defendant consisted of himself, the woman with whom he was living as his wife, his brother-in-law, and a druggist who appears to have been a boon companion. Their evidence discloses that, at the time of the offense charged, the defendant was engaged in bootlegging, that he was living in a state of adultery with another man's wife, that on the evening in question he was drunk, and that he was absent from his companions at the time the rape was committed; and, although he testified he saw a number of persons during this time, no one of them appeared to bear witness to that fact. He fled to Canada either the second or the fourth day after the commission of the crime. The officer who brought him back testified

that on the way back the defendant told him, "I was drunk at the time," and stated, "If I did it, I don't remember anything about it," and later said, "When I heard and read about the case, I got out." As has hereinbefore been shown, the defendant and his car were positively identified, not only by the prosecuting witness, but by disinterested women whose character was in no way attacked.

After a very careful and thorough examination of the whole record, we are of the opinion that no substantial miscarriage of justice resulted from the erroneous admission of the portion of the letter written by Adeline West to the defendant, or from the inadvertent phrase incorporated in the seventh instruction, and that, by virtue of chapter 157, Laws 1921, the judgment of the district court should not, because of these errors, be set aside.

For the reasons hereinbefore set forth, the judgment of the district court is

AFFIRMED.