DAVID L. BARLASS v. JOHN BRAASH.

[FILED JULY 11, 1889.]

1. **Affidavits** used in the district court will not be considered in this court in error proceedings, unless made part of the record, which can ordinarily be done only by means of a bill of exceptions. (*Walker v. Lutz*, 14 Neb., 274.)

2. **Conversion:** DAMAGES. In an action for the wrongful taking and conversion of goods, the fair market value of the goods at the time and place of the taking is, ordinarily, the true measure of damages. This is so where the defendant is a sheriff and seeks to justify the taking under an execution; and where the good faith of such officer is undoubted.

3. **An Instruction** asked for by defendant, *held*, properly refused, as not applicable to, nor based upon, the evidence in the case.

4. **Evidence.** The reception in evidence of the replevin bond in another action, and the overruling of defendant's objection to "any evidence regarding such replevin bond," *held*, no error.

5. ———. The rejection of the schedule of appraisement of the property replevied in the former case, as well as of oral testimony of the value of said goods as fixed by the appraisers, when offered in evidence, *held*, no error.

6. **The damages** given by the verdict are not excessive.

ERROR to the district court for Adams county. Tried below before GASLIN, J.

*W. L. Marshall,* and *Capps & McCreary,* for plaintiff in error, cited: *Blakeslee v. Rossman,* 43 Wis., 116–128; Wells on Replevin, secs. 474–478, and cases cited; *Welton v. Beltezore,* 17 Neb., 399; *Blue Valley Bank v. Bane,* 20 Id., 294; *Cruts v. Wray,* 19 Id., 582; *Jennings v. Johnson,* 17 O., 154; *Battis v. Hamlin,* 22 Wis., 669; Sutherland on Damages, vol. 3, 527, 528; *Freeman v. Rawson,* 5 O. St., 1; 1 Smith's Leading Cases, 49, 50.

*Bowen & Hoeppner,* for defendant in error, cited: Wells on Replevin, secs. 476–479; *Hagan v. Lucas,* 10 Peters, 401; *Peckinbaugh v. Quillin,* 12 Neb., 588, 589; Jones on Chattel Mortgages, sec. 556.

COBB, J.

This cause was brought to this court on error from the district court of Adams county.

The plaintiff below alleged that, on February 2, 1888, he was the owner in possession of certain goods and chattels, comprising his stock of merchandise and hardware, enumerated in the petition, of the value of $1,500, and that on said day the defendant below wrongfully obtained possession of the same and converted the goods to his own use, to the damage of the plaintiff $1,500, and prays judgment, etc.

The defendant answered, denying each and every allegation, and set up that plaintiff's purported ownership of the goods, wares, and merchandise mentioned was derived through a certain purported chattel mortgage made by plaintiff's brother, one Henry F. Braash, to plaintiff, April 12, 1887, purporting to convey to plaintiff his stock of hardware, and store fixtures, situate on lots 10 and 12,

in block 23, of Hastings, Nebraska; and that the said mortgage was given for the purpose of hindering, delaying, and defrauding the creditors of Henry F. Braash and is therefore void.  The defendant also set up that the mortgagor kept possession, and had the exclusive control and management of the mortgaged goods, and continued to sell the same, in the usual course of trade, from the date of the mortgage to January 18, 1888, with the permission and consent of the plaintiff, and applied the proceeds to his own use, viz., paying to the plaintiff $155.80 in satisfaction of a debt not secured by the mortgage; applying the proceeds of sales to the payment of the running expenses of the store in which the goods were kept and sold; and to the living expenses of himself and family and to the payment of other debts, and other needless expenses; the purchase of large quantities of liquors for his own and others' uses, and expenses of sickness of himself, in the fall of 1887, from the excessive drinking of liquors, so purchased with the proceeds of the sales of the mortgaged goods.

The defendant further set up that there never was any consideration passed from plaintiff to Henry F. Braash for the execution of said mortgage; and states the fact that he is sheriff of said county, and obtained possession of said goods as such officer by virtue of an order of execution from the county court of said county, dated February 2, 1888, commanding him to collect the amount of a judgment in favor of The Peninsular Stove Company, of Chicago, Illinois, rendered in said county court January 23, 1888, against said Henry F. Braash, for $505.68, with interest and costs, out of the goods and chattels of said mortgagor; and that the taking of the goods, and all proceedings therein, were had and done under and by virtue of said execution, and in accordance with law.

The defendant alleges that on January 18, 1888, the plaintiff claimed to take possession of the goods under the chattel

mortgage, when demand was made for the same under the execution, and that he voluntarily surrendered possession without claiming to have any interest or right to the possession thereof; that he, neither at the time of the taking of the goods by defendant, nor at any time thereafter, made any demand of defendant for the return of the goods, or claimed to have any interest in or right to the possession thereof, other than by the bringing of this suit; and whatever interest or right plaintiff may have had in and to said goods, has been waived and surrendered by voluntarily delivering the same to defendant to have the same sold under the same execution to pay the said judgment debt of $505.68, and costs, and the plaintiff is now estopped from claiming any interest in or right to the same; with prayer for judgment, etc.

The plaintiff's reply denies each and every allegation of the new matter set up by defendant.

There was a trial to a jury with finding and verdict for the plaintiff for $1,026.33, and judgment for that amount, and $59.73 costs. The defendant's motion for a new trial was overruled and the cause brought up on the following assignments of error.

1. The court erred in allowing plaintiff below to base his title to the goods on a replevin bond given to Burger Bros. and Alexander & Co.

2. In admitting in evidence the replevin bond mentioned.

3. In admitting any evidence regarding the replevin bond.

4. In excluding the evidence of the appraisal of the goods replevied.

5. In giving oral instructions to the jury by reading to the jury from a law book, after the giving of oral instructions had been objected to.

6. In not reducing said instructions to writing, as required by law.

7. In not having the instructions reduced to writing by

the reporter, and filed with the clerk before giving them to the jury.

8. In not filing with the clerk any of the instructions to the jury before giving the same.

9. In giving oral instructions to the jury.

10. In giving oral explanations of instructions to the jury.

11. In giving oral instructions to the jury without the request of the attorney in the case.

12. Excessive damages given under the influence of passion or prejudice.

13. The verdict is not sustained by sufficient evidence.

14. It is contrary to law.

15. In refusing to give instructions 1 and 2 asked for defendant.

16. The court erred in overruling the motion for a new trial.

It appears from the bill of exceptions that one Henry F. Braash, of Hastings, was the owner of a stock of hardware, etc., and that he mortgaged the same to the defendant in error in this case (John Braash, of Minnesota), to secure the payment of $2,034 and interest. This mortgage was duly filed in the clerk's office of Adams county, April 14, 1887.

On January 19, 1888, as claimed by the defendant in error, there remained due and unpaid of said sum, for which the mortgage was given, $544.21, whereupon the defendant in error seized the mortgaged property for the purpose of foreclosing the mortgage; that on the evening of said 19th of January, Burger Bros. and Alexander & Co., creditors of Henry F. Braash, the mortgagor, commenced an action in the county court of Adams county by attachment against Henry F. Braash, and levied upon and attached said stock of goods, and took them out of the possession of the mortgagee, the defendant in error herein. On the next day, January 20, 1888, John Braash, the mortgagee,

brought an action of replevin in the district court of said county against the sheriff (the plaintiff in error herein), which writ was placed in the hands of the coroner of said county, who served the same and replevied the mortgaged goods out of his hands, and caused the same to be appraised according to law, and valued at $801.60; that thereupon the plaintiff in said action (defendant in error herein), caused an undertaking to be executed, by two approved sureties, to the sheriff (defendant therein) in $1,605, which undertaking, after setting forth that John Braash had caused an order of delivery of a certain stock of hardware, etc., to be issued out of the district court of said county, in a case then pending, wherein John Braash is plaintiff and David L. Barlass is defendant, and also reciting the delivery of said order to F. L. Brown, coroner, and the taking by the coroner of the goods and chattels, and the valuation of the same, by two responsible persons under oath, at $801.60; the signers thereof undertook, in the penal sum stated, that said John Braash, plaintiff, should duly prosecute his action and pay all damages and costs which might be awarded against him, and should return said property to the defendant in case judgment for the return thereof should be rendered against the plaintiff therein, which undertaking was duly approved and accepted by the coroner, and by him returned and filed in the clerk's office of said county; whereupon the coroner delivered the said goods and chattels to the plaintiff in said action of replevin. So far as appears, the action is still pending and undetermined in the district court of Adams county; but on February 2d following, the Peninsular Stove Company, also a creditor of the said Henry F. Braash, the mortgagor, having a judgment against the mortgagor in some court of said county, but in which one does not appear, caused an execution to be issued and levied upon said goods, took them into possession, and subsequently sold them to satisfy said execution, for which

transaction, and for the value of the goods, this suit is brought.

There is no dispute as to these facts. The evidence is somewhat conflicting as to the value of the goods, but so far as that can be material to this review, it is settled by the verdict in the court below.

The 5th, 6th, 7th, 8th, 9th, 10th, and 11th errors assigned in the petition in error relate to the manner of giving instructions to the jury by the trial court. Attached to the record in the case is an affidavit of one of the attorneys of plaintiff in error, setting out that in giving the instructions to the jury in the case, and after affiant had objected to the giving of oral instructions, and against the objections of affiant, the court gave to the jury oral instructions by reading from a law book to the jury, and did not reduce the same to writing, as required by law, and that the same were not taken down by a stenographer and reduced to writing, as required by law, and that none of the instructions given by the court were filed with the clerk, as required by law, before the same were given to the jury, and that the court gave oral explanations of the same to the jury. The defendant in error moved to strike this from the files of the case, for the reason that the same was not properly authenticated and preserved by bill of exceptions, which motion was submitted with the issues in the case.

It has been so often held in this court, that the necessity for repeating it seems superfluous, that affidavits taken for the purpose of procuring a new trial will not be considered by the court unless duly authenticated and preserved by bill of exceptions. The affidavit therefore cannot be considered. As applicable to what has been said, I will call attention to the fact that in the journal entry of the proceedings of the court on the day of the trial, and immediately following the giving of the statement of the charge of the court to the jury, is the following entry: "And

after the instructions had been read to said jury, the counsel for both parties consented that the presiding judge should read to the jury the case of *Davis v. Scott*, from 22d vol. Neb. Reports, p. 154."

It also appears from the record that the two instructions given by the court on its own motion were filed by the clerk on the 20th of June, 1888, which was the day of the trial; that the 3d and 4th instructions following the above without any title showing whether they were given by the court on its own motion or at the request of one of the parties are both marked *given* on the margin, and at the bottom of the 4th is a copy of the endorsement, with the title of the case, the word *instructions*, and the docket number marked filed June 20, 1888, attested by the signature of the clerk.

The first instruction asked by the plaintiff appears to have been endorsed: "To the giving of this instruction the defendant excepts (signed by counsel). Refused and excepted to by plaintiff. Instructions of court, filed June 20, 1888 (signed by the clerk)." The second instruction asked for by defendant, and No. 1 without expressed authority, but taken to be the plaintiff's, were both refused, and were sufficiently endorsed to that effect.

Even had the affidavit been presented by bill of exceptions, the record, imperfect as it is in some respects, would have to control those points of difference between it and the affidavit.

I think it may be stated as authoritative, that as to those facts which occur in the face of a trial court, and which enter into the journal of the proceedings, the record must be the sole evidence of such facts in this court. I need not say that these records are sometimes imperfect and faulty, and that there are well-known methods by which in such cases they may be rectified and made to show the facts as they occurred; but these proceedings must be direct and not collateral. When parties bring a

record to this court, and make no suggestion of its dimi-
nution, or ask any orders against the officers of the court
below, who are responsible for it, they should understand
that the cause must be considered here upon the record as
it is, and not what it possibly might be.

The 15th assignment is based upon the refusal of the
court to give the first and second instruction asked by the
defendant, as follows:

"I. If you find that at the time of the seizure of the
goods on execution by the defendant, the plaintiff was in
possession of the goods, and that he voluntarily surren-
dered the possession of the same to the defendant without
claiming to have any interest in or right to the possession
thereof, and that said plaintiff never made any demand of
defendant for the same other than by the bringing of this
suit, you will find for the defendant.

" II. If you find from the evidence that the plaintiff
was the owner and entitled to the possession of the goods
mentioned in his petition, and that they were wrongfully
taken by the defendant, and you also find that the stock
of goods sold for all they could be sold for at public
auction, you will find for the plaintiff, and assess his
damages at the amount for which the goods sold at the
execution sale, deducting therefrom the necessary expenses
of such sale."

The second instruction was properly refused.    The
proposition that where goods are wrongfully taken, even
by a sheriff, and sold at public vendue, upon a writ, the
owner of the goods, from whom they have been wrongfully
taken, is entitled only to the amount for which they may
have been sold, as the measure of his damages, is one
which cannot be approved.    On the contrary, it is the fair
market value of the goods at the time and place of the
wrongful taking and conversion, which constitutes the true
measure of his damages.

The first instruction was rightfully refused, for the rea-

son that it is not applicable to the facts in evidence in the case. It would probably have been applicable, and proper to have been given, had there been evidence tending to prove that the plaintiff consented to, or acquiesced in, the taking of the goods by the sheriff, and no evidence given of a demand by the plaintiff, or his agent, for the goods previous to their sale by the sheriff. But there is an entire absence of the consent or acquiescence of the plaintiff in the taking of the goods, and there is evidence in the testimony of Christopher Hoeppner, that he was the regularly appointed agent of the plaintiff, and as such transacted his business at Hastings, and that after the goods were taken by the sheriff, before the sale, he made a demand of him, on the part of the plaintiff, for the goods, and that the defendant replied that he had a sufficient indemnity bond, and that he would hold the goods under it. The truth of this testimony was not denied by the defendant, although he was afterwards on the stand, recalled as a witness in his own behalf, and examined by his counsel.

The first, second, and third errors will be considered together. As to the first, I will only observe that I know of no means by which the court could have prevented the plaintiff basing his title to the goods on a replevin bond. Indeed, I suppose that this assignment was only intended by counsel as introductory to the second and third assignments. The objection to admitting in evidence the replevin bond, and "admitting any evidence regarding the replevin bond," are substantial objections and will be further considered. These goods, as appears from the weight of testimony, and as found by the verdict, were rightfully in the possession of the plaintiff for the purpose of foreclosing the mortgage, which he held thereon. They were levied on and taken from his possession by the sheriff under an execution in favor of Burger Bros. and Alexander & Co. In order to protect his lien the plaintiff replevied them from the possession of the sheriff. To do

this he was obliged to, and did, give the replevin bond referred to.   By the terms of this bond his sureties were bound to redeliver the goods to defendant in the replevin action in the contingency of judgment being rendered for the defendant in said action.   Pending the determination of the action, and before the decision thereof, the goods were in the custody of the law.   Had such bond not been given by the plaintiff within twenty-four hours from the taking of the property under the order of replevin, it would have become the duty of the coroner to have returned the property to the defendant, which the law presumes he would have promptly done.   (Sec. 188, Code of Neb.)   In that case it would have been competent for the sheriff to have levied the execution of the Peninsular Stove Company upon the same, subject, of course, to his levy thereon already made.   It was therefore not only proper, but necessary for the plaintiff, in the case at bar, to plead, and to prove, the giving of the replevin bond in the case referred to.   Errors 1, 2, and 3 must therefore be overruled.

The fourth ground of error assigned, "in excluding the appraisal of the goods replevied," is doubtless mainly based upon the following clause at the close of the bill of exceptions: "Defendant's counsel offer in evidence the appraisement in the replevin case" (defendant's exhibit 2), objected to by plaintiff, and the objection sustained; but probably also, in part, upon the refusal of the court to allow F. C. Ashhall, a witness on the part of defendant, and one of the appraisers in the replevin suit, to answer the following question: What was that estimate or invoice; what in your opinion was the value of the goods at that time?   The plaintiff's objection to this evidence was sustained by the court and the question overruled.

Sections 181, 182, 183, 184, and 185 of the Code provide for the manner of commencing actions of replevin; section 186 provides that "the sheriff or other officer shall not deliver to the plaintiff, his agent, or attorney, the

property so taken, until there has been executed by one or more sufficient sureties of the plaintiff a written undertaking to the defendant in at least double the value of the property taken, to the effect that the plaintiff shall duly prosecute the action and pay all costs and damages which may be awarded against him, and return the property to the defendant in case judgment for a return of such property is rendered against him. The undertaking shall be returned with the order." Section 187 provides "that for the purpose of fixing the amount of the undertaking, the value of the property shall be ascertained by the oaths of two or more responsible persons whom the sheriff or other officer shall swear truly to assess the value thereof." This section expresses the sole purpose for which the value of the property shall be ascertained. It does not even provide that a schedule or appraisement of it shall be made out, but good practice requires that such should be done, especially when the articles of property levied upon are numerous. But it need scarcely be said that this value, assessed by the persons appointed as appraisers, is not made evidence to be used in court. While I will not say that cases may not arise in which such evidence may be admissible for some purposes, yet no occasion existed in this case for its introduction, and the rejection by the court of the paper exhibit when offered, as well as the oral testimony of the witness of the value of the property as appraised, are obviously correct.

The 12th, 13th, 14th, and 16th errors assigned will be considered together, as they are but varied attacks, under different forms of expression, against the verdict of the jury.

It is stated in effect that the verdict of the jury must be held to settle the questions of the *bona fides* of the plaintiff's mortgage, and of his possession of the goods under it at the time of their seizure and conversion by the defendant. Their value is also fixed by the verdict, there being evidence to sustain it. Henry F. Braash testified to the

value of the property to the sum of $1,106.14. The witness, G. W. Green, testified to the value at $1,200, while F. C. Ashhall and other witnesses on the part of the defendant fixed the value of the property at $700. The jury it seems struck a medium, and doubtless considered all of this evidence, and as they not unusually do, fixed upon a value between the higher and lower estimates, and being the sole judges of the evidence their estimate must control.

It will be observed that no error is assigned or exception taken, in the petition in error, to the instructions given by the court on its own motion, or to those given as asked by the defendant in error. The giving of these instructions will not be further considered.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

The other Judges concur.