## DORSEY REDICK v. THE STATE.

### No. 4910.   Decided April 3, 1918.

**1.—Murder—Argument of Counsel.**

Where, upon trial of murder, the county attorney by inadvertence imputed certain testimony to a certain witness who did not testify thereto, but it appeared from the bill of exceptions that such testimony was produced by other State's witnesses, towit, that the defendant threw rocks at the house in which deceased was at the time, there was no reversible error.

**2.—Same—Conduct of District Attorney—Cross-examination.**

While the character of a cross-examination of the defendant was improper and should not have been permitted, yet in view of the record and bills of exception it was not of sufficient importance to cause a reversal.

Appeal from the District Court of Ellis.   Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Clyde F. Winn* and *Sidney E. Dawson,* for appellant.—On question of argument of counsel:   Laubach v. State, 12 Texas Crim. App., 583; Robbins v. State, 83 S. W. Rep., 690; Tillery v. State, 5 id., 842; McKinley v. State, 52 Texas Crim. Rep., 182, 106 S. W. Rep., 342; Kirksey v. State, 61 Texas Crim. Rep., 298, 135 S. W. Rep., 124; Logan v. State, 66 Texas Crim. Rep., 506, 148 S. W. Rep., 713; Sylvas v. State, 68 Texas Crim. Rep., 117, 150 S. W. Rep., 906.

On question of cross-examination:   Cooper v. State, 66 Texas Crim. Rep., 441, 147 S. W. Rep., 273; Shedd v. State, 68 Texas Crim. Rep., 373, 153 S. W. Rep., 125.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and awarded ten years confinement in the penitentiary.

There are two bills of exception setting up practically the same state of facts.   The first bill recites that while the county attorney was making his closing argument he used the following language:   "Candy Dunn testified that he saw this defendant, Dorsey Redick, throwing bricks and rocks into the house of the deceased, Fif, there a short time before Fif was killed."   Exception was reserved to this statement, and a charge asked instructing the jury to disregard the statement of the county attorney because there was no such evidence in the record.   The other bill is practically the same.   The judge signs the first bill with a state-

Vol. 83 Crim.-15

ment, and refers to that statement in his qualification of the second bill. The statement of the judge is as follows: "The foregoing bill of exceptions is approved, presenting practically the same question, being bills of exception Nos. 1 and 2. At the time the objection was made to the argument of the county attorney complained of in these two bills, I was under the impression that Candy Dunn had testified that he saw defendant throwing rocks or bricks into the house where deceased lived. By an examination of the statement of facts the court will discover that some witnesses had testified to that fact, and an examination of the bill itself will show that this witness, Candy Dunn, had seen them throwing rocks but did not testify that the rocks were thrown into the house. There being testimony in the case by some of the witnesses that the rocks were thrown in the house, I did not think it of sufficient importance to stop the county attorney in making his closing argument where he had called the name of the wrong witness who testified to those facts. The jury in the trial of cases of this character, as well as all others, are presumed to be men of ordinary intelligence, and slight mistakes of this kind are not calculated to mislead them." This is signed officially by the trial judge.

There is evidence of witnesses to this effect: "I put Cat (defendant) out of the door. He was not trying to get out all the time; he was trying to get to Fif (deceased), I was holding them apart and I crowded and shoved him out of the door. I shut the door and Fif didn't go and throw no bottle at Cat. Cat throwed a rock in the window. I didn't see anybody throw no bottle as Cat ran out of the house. Cat went down there and got a whole lot of rocks and came back and throwed them in the house as I went on home, and I holloaed back and told them to stop that foolishness, they would get into something they never would get out of. Fif and Cat both throwed rocks. Cat was throwing rocks at Fif and Fif was throwing rocks at Cat." Another witness testified in this connection: "I never heard nary one of them say a cuss word while my daddy held them apart. (The daddy here referred to was the preceding witness from whose testimony the first quotation was made.) Then papa went on home and when he got over the hill Dorsey came back—I don't know whether he went off or not, but anyhow he came back and Fif was standing in the door and he throwed at Fif with a brick and Fif jumped back and walked back in the door and he throwed at him again with a brick. Dorsey throwed at Ben Franklin When Dorsey throwed at Fif again Dorsey walked around farther, around to the side of the house, and Dorsey throwed through the window at Ben Franklin but didn't hit him." The following quotation is also made: "I never saw Fif throw nary rock at Cat. Cat throwed some brickbats at Fif. I did not see Fif throw at Cat at all; did not see Fif throw any rocks or brickbats out of the door at Cat. Cat threw, I don't know how many times, at Fif standing in the door. Fif would walk to the door and Cat would throw a rock at him and Fif would jump back. If Fif threw any rocks at anybody it was more than I seen." It will be understood that where the name of Dorsey or Cat is used, that it means the defendant, and where Fif or Ben Franklin is used, it means the deceased.

We are of opinion that while the county attorney was in error in imputing this evidence to the witness Dunn, yet this testimony would justify the statement made by the county attorney, except he imputed it to the wrong witness. The bill of exceptions would show the statement of the county attorney puts Candy Dunn in the attitude of making appellant the wrongdoer in throwing the rocks, which was a material matter. It placed appellant in the attitude of throwing rocks at the house in which deceased was. If there was no testimony showing that appellant threw rocks at the house, this might be a serious matter, but these witnesses testified that rocks were thrown by appellant at the deceased in the house, and the fact that the county attorney imputed it to the wrong witness, we think, was not of material consequence. If the rocks were thrown as testified by witnesses quoted, the mere fact that the county attorney imputed their testimony to Dunn instead of the other witnesses would hardly be of sufficient importance to cause a reversal. The materiality of the testimony lay in the fact that the rocks were thrown by defendant just preceding the difficulty. If he did not throw the rocks it would place him in a bad light before the jury under the imputation of the county attorney, but if he threw the rocks, the mere fact that the county attorney used the name of the wrong witness would not change the fact of his throwing the rocks, or the attitude of appellant to the case by reason of throwing the rocks. We do not believe this should reverse the judgment.

There is another bill of exceptions which recites that the county attorney asked the defendant, on cross-examination, the following questions: "Don't you know it is a fact that he (deceased) did not have his hand in his pocket when you shot him?" The appellant answered: "I know he did have it." Q. Don't you know it is a lie?" Objection was interposed to this for various reasons, and the question was then propounded in this form: "Don't you know that you are swearing a lie— that he did not have his hand in his pocket?" To this the appellant answered, "No, sir." This character of cross-examination of the defendant ought not to be indulged, and in fact this character or manner of questioning any witness ought not to be permitted. But in view of the statements in the bill we do not regard it as of sufficient importance to reverse. While it may have impressed the jury with the belief that the county attorney thought the witness was lying, or at least he was seeking to impress them with the idea that he was lying, yet his testimony was favorable to himself, that he was not lying at the time he stated the deceased had his hand in his pocket when he shot him. These are the three questions presented for revision. We are of opinion they are not of sufficient importance to require a reversal of the judgment, and it is affirmed.

*Affirmed.*