HOWARD LEE V. STATE OF NEBRASKA.

FILED DECEMBER 1, 1932. No. 28297.

*L. R. Doyle* and *T. C. Gaughan,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle,* contra.

Heard before ROSE, DEAN, GOOD, EBERLY and PAINE, JJ.

EBERLY, J.

The information in this case against the defendant, Howard Lee, charged a violation of section 28-537, Comp. St. 1929. The felony created by this statute "lies in the violence of or against the bank" or "putting in fear any person or persons in charge thereof," coupled "with an intent to steal, take or carry away" any of the bank's money or property. *Smith v. State,* 109 Neb. 579.

On this charge a trial to a jury was had, resulting in a verdict of guilty. Thereafter defendant's motion for a new trial was overruled, and a sentence of confinement in the state penitentiary for the period of twenty-five years was imposed. The defendant prosecutes error to this court.

Three grounds for reversal are presented, which we will consider in the following order: (1) Insufficiency of the evidence; (2) misconduct at the trial on the part of the county attorney and his deputy; (3) newly discovered evidence which the defendant could not with reasonable diligence have produced at the trial.

As to the insufficiency of the evidence, it may be said that the crime charged, viz., the violation of section 28-537, Comp. St. 1929, is not only established beyond a reasonable doubt, but is in fact unquestioned. Both the witnesses for the state, as well as the witnesses for the defendant, agree that in broad daylight about 10 o'clock a. m. on September 17, 1930, the banking house of the Lincoln National Bank & Trust Company in the city of Lincoln was raided by an armed band of unmasked and undisguised brigands, and more than two million dollars

of personal property belonging to, or in the custody of, that institution was by them, through force, fear and violence, taken and carried away. So, the actual invasion of, or entrance into, this building occupied by this bank and trust company on the date alleged in the information, by an armed band, "with intent to take, steal and carry away" the moneys, goods and chattels or other property belonging to, or in the care, custody and control of, this institution, is indeed an admitted fact. The *corpus delicti* must therefore be taken as fully proved. Indeed, the only issue of fact tendered in behalf of the defendant was a challenge to the sufficiency of the evidence identifying him as one of this band of marauders who committed the crime.

The record discloses that this crime occurred in broad daylight. Some ten minutes were occupied in its accomplishment. The participants were unmasked and undisguised. Some thirty bystanders were present, witnessed what was done, and, in close proximity, saw who did it. More than seven of these at the trial, as witnesses for the state, positively identify the defendant Lee as present, and as an armed member of this band, actively participating in the robbery. On the other hand, the testimony of defendant's witnesses who were present when this robbery occurred, in the main, substantially limit their testimony to the conclusion that they do not recognize Lee as one of the armed band, and that certain of the bandits who were stationed at particular places at different times during the robbery, in their opinion, could not be identified as Lee. However, no less than four of defendant's witnesses testify to certain facts and conclusions which tend to corroborate the witnesses for the state. One witness testified, in behalf of the defendant, that Lee was in East St. Louis on dates and times that rendered participation in the robbery by him impossible. In the light most favorable to the defendant, the testimony preserved in the bill of exceptions presents merely questions of conflicting evidence, the relative weight of which is neces-

sarily determined by the credibility of the witnesses from whom elicited. So considered, it presents a question solely for the jury, who saw the witnesses and heard the testimony. Their decision is therefore binding on this reviewing court, and their verdict must be deemed to find ample support in the evidence. *Curtis v. State,* 97 Neb. 397; *Smith v. State,* 109 Neb. 579; *Ingoldsby v. State,* 110 Neb. 495; *Osborne v. State,* 115 Neb. 65; *Williams v. State,* 115 Neb. 277; *Cherpinsky v. State,* 122 Neb. 52.

The defendant charges many instances of misconduct by the county attorney and his deputy in their addresses to the trial jury. The speeches of these officers are preserved in the bill of exceptions. Defendant's exceptions on this subject are numerous, too numerous to be separately considered and discussed in this opinion. The record, however, has been examined with care. In view of the evidence as an entirety, the legitimate inferences which portions thereof would naturally and legitimately sustain, and particularly the attitude of the trial judge and the manner in which each objection of the defendant to the remarks of the prosecuting officers was determined by his rulings, we do not find that the conduct complained of operated to deprive the defendant of the fair consideration of his case by the jury, to which he was entitled.

It must always be remembered in this connection that "An appeal for conviction based altogether upon the evidence, however fervent it may be, is not an abuse of the privilege of advocacy." *Parker v. State,* 67 Neb. 555. So, too, it is not misconduct on the part of the prosecuting attorney, but is indeed his duty, to comment on the credibility and conduct of the defendant's witnesses, based on evidence and facts properly before the jury. *Tatum v. State,* 61 Neb. 229; *Dinsmore v. State,* 61 Neb. 418; *Reed v. State,* 66 Neb. 184; *Holmes v. State,* 82 Neb. 406. And, in this connection, it is not improper for the prosecuting attorney to comment on the conduct of the accused and his counsel during the trial or to impute to them characteristics justified by the evidence, even though on

the subject involved the evidence of the state and that of defendant is in direct conflict. 16 C. J. 907; *Dinsmore v. State,* 61 Neb. 418; *Johnson v. Commonwealth,* 24 Ky. Law Rep. 842; *State v. Cameron,* 177 Ia. 379. And while county attorneys owe an imperative duty to the accused, to accord him a fair trial, as well as to the state to see that its criminal statutes are enforced, still remarks in argument, if brought about and made in answer to the argument of the prisoner's counsel, do not necessarily authorize the reversal of a conviction, especially when these arguments of defendant's counsel, though heard by the trial judge, are not preserved in the bill of exceptions. *Cleveland v. State,* 80 Tex. Cr. Rep. 334; *Deisher v. State,* 80 Tex. Cr. Rep. 428; *Rose v. State,* 122 Ark. 509; *State v. Slamon,* 73 Vt. 212; *State v. Busse,* 127 Ia. 318; *Reeves v. State,* 84 Ind. 116. And lastly, misconduct of counsel is never ground for a new trial unless prejudicial. *Rogers v. State,* 93 Neb. 554; *Heyl v. State,* 109 Ind. 589; *United States v. Mitchell,* 136 Fed. 896.

The last proposition for consideration is defendant's contention that the district court erred in overruling defendant's application for a new trial based on the ground of newly discovered evidence, which defendant could not with reasonable diligence have produced at the trial. The brief of defendant recites: "This evidence was set out in an affidavit of Herbert Holmes (B. of Ex. p. 641A) and also in testimony of W. E. Barkley (B. of Ex. pp. 612-640)."

The statute relating to proceedings in error in criminal cases contemplates "the filing (in the supreme court) * * * of a transcript of the record of the proceedings of the district court * * * as in civil cases." Comp. St. 1929, sec. 29-2306. This section assimilates the procedure in the supreme court in criminal cases to the practice in civil cases in that court, and makes the provisions of the Civil Code of proceedings in error applicable to such proceedings in error in criminal cases, except where specific statutes are inconsistent therewith. *Kountz v. State,* 8 Neb. 294; *Kock v. State,* 73 Neb. 354.

On page 24 of the transcript in this case we find set out the "motion to set aside and vacate sentence and order overruling motion for new trial and to grant a new trial," with affidavit of Howard Lee attached forming a part thereof, and all of which was filed January 7, 1932. The sole ground upon which this motion was based appears as newly discovered evidence in possession of and to which one W. E. Barkley would testify in the event of another trial. The transcript also contains an order of the district court entered July 9, 1932, overruling this motion "filed July 7, 1932." The evidence received and considered on this hearing appears on pages 612-640 of the bill of exceptions. It is limited to the oral examination of W. E. Barkley, and the motion heretofore referred to as filed "January 7, 1932," and the supporting affidavit thereto attached. This evidence, fairly considered, fully justifies the action of the trial court in the denial of this motion.

In so far as an application for a new trial based on the affidavit of Herbert Holmes is concerned, no such application is shown in the transcript, and no such affidavit is preserved in the bill of exceptions allowed and settled by the district court. It is to be remembered that the necessity of having a proper record of the action complained of is not merely enforced by the wording of the controlling statute, but emphasizes a jurisdictional fact. This court is given no jurisdiction to correct any errors save those only "appearing in the record." So far as the action of this court of review in a criminal case can be called a trial, it is a trial of the correctness of the lower court's decision, and the evidence of those acts of that court, whose correctness is on trial, can be furnished only by the record, as by its records alone can that court speak. *Barlass v. Braash*, 27 Neb. 212, 219. The cause here must be considered on the record as it is, not what it possibly might be. In the present case the certificate of the clerk authenticating the transcript expressly enumerates what is contained therein, and is in

appropriate and proper form only when used in verifying a part of the record of the trial court which is transmitted to the supreme court, and carries no implication that any proceedings of the trial court in the case, except as expressly enumerated, are to be found in the record which such certificate verifies. No mention is made in this certificate of a motion for a new trial because of newly discovered evidence, based in whole or in part on the affidavit of Herbert Holmes. Neither does this transcript affirmatively show any record of the trial court's ruling on this particular application. It is quite obvious that the one vital and indispensable record essential to the consideration of this question is absent from the transcript in this case. *Romberg v. Fokken,* 47 Neb. 198; *Hake v. Woolner,* 55 Neb. 471.

It appears without question that defendant's proposed bill of exceptions was served upon the county attorney of Lancaster county on February 2, 1932. On the 3d day of the same month it was returned "with no amendments proposed thereto," and on the same day presented to and allowed by the trial judge by a certificate bearing date of February 3, 1932, and on the same day was filed in the office of the clerk of the district court for Lancaster county. Conclusive evidence contained within the bill of exceptions discloses that on or after February 9, 1932, certain written documents, including what purports to be an original "Motion to vacate order, set aside sentence and grant a new trial," with an original affidavit of Herbert Holmes in support thereof, and purporting to have been filed in the case of State v. Howard Lee in the district court for Lancaster county on December 26, 1931, were, without authority, physically attached to the bill of exceptions theretofore allowed, and the original certificate of allowance and settlement of the trial judge bearing date of February 3, 1932, reattached at the end or conclusion of the documents thus physically attached on and after February 9, 1932. Assuming that this motion for new trial based on the affidavit of Herbert

Holmes is the original motion and was inadvertently omitted from the transcript, its appearance here in its present context will not aid the defendant nor support the omission in the transcript. The words "a transcript of the proceedings," as employed in the Criminal Code to designate what shall be filed with a petition in error, include within their meaning duly certified copies of original papers and pleadings in the trial court, which it is sought to present to the attention of the appellate court. The filing of the original papers and pleadings is not contemplated and will not fulfil the requirement of the statute. *Royal Trust Co. v. Exchange Bank,* 55 Neb. 663; *School District v. Cooper,* 44 Neb. 714; *Moore v. Waterman,* 40 Neb. 498. So far as these added documents possess the character of evidence, in view of the facts already recited, they are subject to the rule: "Evidence not contained in the bill (of exceptions), nor made a part thereof, will not be considered by the appellate court, even though appended to the bill." 4 C. J. 227. Evidence not embraced in the bill of exceptions, as actually allowed and settled, is not entitled to any consideration whatever by this court. *Crocker v. Steidl,* 82 Neb. 850; *Schmidt v. Village of Papillion,* 92 Neb. 511.

But assuming the question properly before us, the affidavit of witness Holmes, who testified for the state, that he was mistaken in his testimony given at the trial as to the identity of the accused as one of the participants in the robbery, does not bring this case within the principles which are cited in defendant's behalf on this point, so as to justify or require the trial court to sustain a motion for a new trial. The scope of the testimony thus sought to be retracted by this proceeding extends no further than to establish as an ultimate fact that this witness was present as a spectator at the robbery, and there saw Howard Lee, whom he had never previously met, participating therein. The following from his cross-examination may be taken as typical of this man's evidence: "Q. I say you wouldn't want to tell the jury

you positively saw Mr. Lee during the bank robbery?
A. Since I went and identified the man I think I would.
Q. But you wouldn't want to be absolutely positive about
it, would you? A. Well, that is my opinion; yes, sir.
Q. Wouldn't you say, Mr. Holmes, to be fair and to be
absolutely honest with yourself, that you saw a man
there that looked like Lee? A. Such a close resemblance,
Mr. Doyle, that I could hardly say he wasn't Mr. Lee.
Q. But it is not absolutely close enough to say positively
in your mind that it was, you couldn't positively say
that? A. Well, I don't know whether my opinion was
positive or not."

Six other witnesses for the state, likewise present as
spectators at the commission of the crime and whose
credibility does not appear to have been successfully at-
tacked, positively identify the accused as one of these
robbers.

In this situation defendant cites *State v. King*, 27
Utah, 6, where a new trial was directed by the reviewing
court. In this case King was charged with the murder
of one Prowse. William Wittenberg, a state witness,
testified he saw two men "coming around from the Sheep
Ranch" where Prowse was killed, immediately after the
murder had been committed, with handkerchiefs over
their faces, who he then followed and kept in sight until
they entered a lighted room and removed their masks,
where he recognized the defendant as one of the masked
men. No others witnessed this incident, and none were
present at the killing of Prowse. Wittenberg was thus
the sole witness to the facts detailed in his evidence, and
the reviewing court was of the opinion that without this
evidence it was extremely doubtful whether conviction
could be had.

Defendant also cites *Green v. State*, 49 Tex. Cr. Rep.
204. In this case but two witnesses testified as to the
alleged criminal act. "Taylor swore positively that he
bought the whisky from appellant (Green). Appellant
swore directly and positively that he did not sell him

(Taylor) any." Supporting the motion for a new trial on the ground of newly discovered evidence is the affidavit of Taylor: "I am now satisfied that I am mistaken in the identity of said defendant, Tom Green; and I hereby solemnly swear that defendant, Tom Green, mentioned herein and tried and convicted, * * * is not the person who sold me said intoxicants." Here again it was the retraction by the sole and only witness of the state to the disputed fact that caused the court to grant a new trial.

Defendant also cites *Bailey v. State,* 36 Neb. 808. While a new trial was directed by this court in that case, the reasoning of the opinion appears opposed to accused's contentions. Irvine, C., in the opinion in that case states: "This court has stated the doctrine as to cumulative evidence to be that a new trial will not be granted unless such evidence be of so controlling a character as to probably change the verdict. *Flannagan v. Heath,* 31 Neb. 776; *Keiser v. Decker,* 29 Neb. 92. The same principle should apply here. The only direct evidence of the fact of marriage was the testimony of the prosecuting witness. While the jury were justified in believing it, there are many facts tending to its discredit. The evidence of Woodward as to a contrary statement made to him before this prosecution was begun would be a very material fact for the consideration of the jury in weighing her testimony and would very probably have led to a different result. Moreover, this testimony would not be entirely in the nature of impeachment. The question of marriage depended largely upon the intention of the parties, and this testimony tends to show that Mrs. Bailey had not in fact regarded their relations as those of husband and wife. Under the circumstances of this case a new trial should have been allowed." It is obvious that, in view of the essential difference in the facts, the principles announced in the *King* and *Green* cases can have no application to the facts here presented, and the reasoning in the *Bailey* case tends to support the action of the trial judge in the instant case.

It seems a principle almost universally accepted by the courts of this nation that the granting or refusal of a new trial rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed unless there has been a clear abuse of such discretion. And, also, in the exercise of this discretion the courts have always listened distrustfully to the claim of newly discovered evidence, and as a ground for new trial it is not favored. 16 C. J. 1181; *Riley v. Missouri P. R. Co.,* 69 Neb. 82; *Davis v. State,* 51 Neb. 301; *Omaha Street R. Co. v. Emminger,* 57 Neb. 240, 245.

So, too, we have repeatedly held that the positive testimony of one credible witness, identifying the defendant as perpetrator of the crime, is sufficient to support the conviction. *Buckley v. State,* 79 Neb. 86; *Schultz v. State,* 88 Neb. 613; *Cherpinsky v. State,* 122 Neb. 52. As we have already seen, this court will not interfere and direct the granting of a new trial because of absence of sufficient proof, where there is material evidence tending to support the verdict.

It therefore necessarily follows that in the instant case the refusals of the trial court to sustain defendant's various motions for a new trial are not suggestive of an abuse of discretion, but were fully justified by the record. The judgment of the district court is, therefore,

AFFIRMED.