WALDON FRODING ET AL. V. STATE OF NEBRASKA.

FILED SEPTEMBER 29, 1933.   No. 28761.

*William L. Dowling* and *Charles J. Thielen,* for plaintiffs in error.

*Paul F. Good, Attorney General,* and *Paul P. Chaney, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS and TEWELL, District Judges.

HASTINGS, District Judge.

Waldon Froding and Leonard Froding, plaintiffs in error, were tried on an information wherein they were jointly charged with robbery on May 18, 1932, from the person of one Herman Reiche, of the sum of $315.   On

the trial the jury returned a verdict finding defendants guilty and each defendant was sentenced to be imprisoned in the penitentiary for a term of 15 years. From said judgment defendants jointly prosecuted error proceedings.

The evidence establishes that about 5 o'clock a. m. on May 18, 1932, Herman Reiche, a 51 year old bachelor, living alone on his farm 6 miles from Newman Grove in Madison county, was assaulted and robbed by three masked men.

Of the many errors assigned in the petition in error, only three are stressed as requiring consideration. One of the errors assigned is that the evidence is insufficient to sustain the conviction of Waldon Froding.

It appears from the testimony of Herman Reiche, the person robbed, that the defendants lived in Newman Grove, and that he had known Leonard Froding by sight for about two years prior to the robbery, but had no acquaintance with Waldon Froding; that during the robbery the mask over the face of one of the robbers became dislodged, Reiche saw his face and afterwards recognized him as one William Barnett. After they had left the house, one of the robbers, with his mask removed, came back and looked into the room where the witness was and was recognized by him as Leonard Froding. During the robbery all three of the participants were talking and he heard what they said and took account of their voices. The witness positively identifies the two defendants and William Barnett as the men who robbed him. His identification of Waldon Froding was by his voice. It appears that the witness had never heard the voice of Waldon Froding prior to the time of the robbery, but, on hearing it afterwards, recognized it as the voice of one of those participating in the robbery.

It is insisted that the identification of Waldon Froding by his voice is insufficient to establish his identity.

"That one may be identified by his voice is now generally held by the authorities. * * * Accordingly it has

been held to be competent evidence to support a conviction, where a prosecuting witness identified the defendant solely by his voice, and where the witness had never heard the defendant's voice but once before the commission of the crime, and that on the same day that the crime was committed, and then heard him speak only a few words." 8 R. C. L. 184, sec. 176. See *Mack v. State,* 54 Fla. 55, 13 L. R. A. n. s. 373, and note.

We have held that the positive testimony of one credible witness identifying the defendant as perpetrator of the crime is sufficient to support a conviction. *Lee v. State,* 124 Neb. 165, and cases cited in the opinion.

The identification by the witness of Waldon Froding as a participant in the robbery is corroborated by other facts and circumstances in evidence. It appears from the evidence that at least one of those who participated in the robbery knew that Mr. Reiche was a bachelor and lived alone on his farm. William Barnett, whom Mr. Reiche identified as one of the robbers, was apprehended a few days after the crime. He pleaded guilty to the robbery and was sentenced to the penitentiary. So the identification of William Barnett as one of the trio committing the robbery is conclusively established. Furthermore, both defendants testified that they left their home on the 17th day of May at about 11 o'clock a. m. and arrived at the home of a friend in Omaha at 6 o'clock in the morning of May 18; that they remained in the city several days and were together all the time from the time they left Newman Grove until their arrest. The defendants were brothers and both made their home with their mother in Newman Grove. If the defendants were together all the time from May 17 until after the robbery, then the evidence identifying Leonard Froding as being a participant in the robbery would also tend to establish that Waldon Froding was present.

Two witnesses for the state testified as to the presence of Leonard and Waldon Froding in Newman Grove after the time they claim they had left for Omaha. One

witness testified that he saw them coming out of the post office at Newman Grove about 2 o'clock in the afternoon of May 17, and the other that he saw the two defendants with a third party leaving their home in Newman Grove at about 7:30 p. m. on that day.

The identification of Waldon Froding by his voice, with the facts and circumstances in evidence corroborative thereof, was sufficient to warrant the jury in finding that he was one of the participants in the robbery.

Misconduct of the county attorney is assigned as error. William Barnett was called as a witness for the state. He refused to testify, and upon being asked by the court for his reason for such refusal stated: "When I plead guilty to the charge these boys are being tried on, it was with the understanding that I would never be called up here as a witness. Mr. Peterson, the county attorney, was at the penitentiary a week ago today and knew at that time that I had no intention of testifying." The witness then, on suggestion of one of the attorneys for defendants, based his refusal to testify on the ground that his testimony might incriminate him. He was then excused by the court. It is urged that this was error tending to prejudice defendants' case before the jury.

Barnett was a competent witness for the prosecution. He was one of the participants in the crime and he knew who the others were. The prosecution had a right to call him as a witness, and he could refuse to testify only by the exercise of his privilege, of which he availed himself. Error cannot be predicated thereon, although the county attorney may have believed that his effort to get the witness to testify might be futile. *People v. Plyler,* 121 Cal. 160; 16 C. J. 891.

It is claimed that, after Barnett had been called as a witness, he was placed in a chair immediately in front of the jury and the county attorney pointed him out as the third party connected with the crime. Even if this were true, it would not constitute misconduct. However, there is nothing in the bill of exceptions showing such

conduct. Two affidavits appear in the transcript reciting this fact, but as they are not a part of the bill of exceptions they will not be considered. *Walker v. State,* 113 Neb. 19.

Further complaint of misconduct of the county attorney is made on his cross-examination of Leonard Froding in asking the following question: "Q. Babe, you are lying and you know it. A. I am not." To which an objection was sustained as improper cross-examination. Two other questions of somewhat similar import were asked and answered without objection being made thereto.

Whether misconduct on the part of a prosecuting attorney is prejudicial to the defendant depends largely upon the facts in each particular case. In the case of *Redick v. State,* 202 S. W. 743 (83 Tex. Cr. Rep. 225), where a similar question was involved, it was held:

"In prosecution for murder, in cross-examining defendant it was improper for the county attorney to ask, 'Don't you know that you are swearing to a lie?' But when the witness answered that he did not know he was lying, the error was harmless."

While the questions propounded were improper, an examination of the record does not disclose that they were prejudicial to the defendants. Other than in this instance the record does not show improper conduct on the part of the county attorney.

Complaint is made that the trial court erred in permitting the introduction of certain evidence in rebuttal to impeach statements made by the defendant Leonard Froding on his cross-examination. On cross-examination Leonard Froding was asked: "Q. Leonard, I think you testified you never talked to any one about this robbery prior to the 18th of May? A. I never. Q. Did you, on or about the 1st of May, talk to Marvin Griffiths in a hamburger hut in Newman Grove about robbing Herman Reiche? A. Absolutely not. Q. Did you, on or about that time, tell Marvin Griffiths that you knew a farmer who was a bachelor who had thousands of dollars in his safe

on his farm and that you and he could go and get it? A. I did not." No objection was made by the defendants to this line of cross-examination.

Marvin Griffiths was called as a witness in rebuttal by the state and the following question was propounded to him: "Q. Did Leonard Froding, on or about the 1st day of May, 1932, tell you that he knew a farmer who was a bachelor who had thousands of dollars in his safe on his farm and that you and he could go and get it?" The witness answered in the affirmative. The only objection made to that question, in substance, was that it was incompetent, irrelevant, not proper redirect examination, and being a part of the main evidence of the state. The objection was sustained as to the defendant Waldon Froding, and overruled as to Leonard Froding.

It is insisted on behalf of Leonard Froding that the court erred in its ruling, in that no sufficient foundation had been laid for impeachment; that the evidence offered was immaterial and that the defendant could not be impeached on an immaterial matter. In *McCormick v. State*, 66 Neb. 337, we held:

"An objection that evidence is incompetent, irrelevant, and immaterial does not raise the question of the sufficiency of the foundation laid for the admission of such evidence."

The objection made does not raise the question as to the sufficiency of the foundation for impeachment. By the objection made, the attention of the trial court was not challenged to the grounds now urged for a reversal, and the sufficiency of the foundation for impeachment will not now be considered.

In this connection it is further urged that the evidence given by the witness Griffiths was not rebuttal evidence, being in the nature of original evidence admissible in the state's case in chief. While the evidence was properly admissible as part of the state's case in chief, yet it was also properly admissible in rebuttal as contradictory of the statements of Leonard Froding made on cross-examination.

In this connection complaint is made to the giving of instruction No. 14. The trial court by that instruction eliminated from the consideration of the jury this evidence as original evidence on the part of the state; told the jury that the same was admitted solely because it might or might not affect the credibility of Leonard Froding's testimony, and that it must not be considered for any other purpose, and they should entirely disregard it in considering the case of Waldon Froding. That instruction was favorable to the defendant. Prejudicial error was not committed by the trial court in admitting the evidence complained of or in giving the instruction limiting its effect.

We have carefully examined the record in this case and find no error prejudicial to the rights of the defendants. The evidence is convincing as to their guilt.

Finally, it is urged that if the judgment be affirmed the sentence should be reduced. In support of this claim it is urged that Barnett, the other participant in the robbery, received a much shorter sentence than that imposed upon the defendants. There is nothing in the record showing what his sentence was. The sentence imposed upon Barnett is not before us for consideration.

The evidence discloses that the defendants and Barnett went to the home of their victim armed with a shotgun, a revolver, and a club. By menacing him with the guns they forced him to open a small safe and then extracted therefrom $315 in money. Evidently believing that it was not all the money he had, they bound him, and one of the defendants struck him on the head and face while he was bound and helpless. They then placed him upon a bed and threatened to set fire to the bed and burn the house unless he disclosed the hiding place of other money; and while he was bound and helpless upon the bed one of the defendants pressed the blade of a knife against his throat, calling him a vile name, and threatening to kill him unless he told them where they could find more money. Finally, convinced that he had no

other money, they took his automobile and drove away with it.

The defendants, at the time of the commission of the crime, were the ages of 19 and 20 years. Their youth is urged as a reason why the sentence should be reduced. It is a matter of common knowledge that many of the crimes of this character are committed by youths of the age of these defendants. Crimes of this kind are committed with an alarming frequency. Usually the victims are those who live alone and are incapable of efficient resistance. In the case of *Cherpinsky v. State,* 122 Neb. 52, a sentence of 23 years was imposed for a crime of this kind. A reduction of the sentence was asked on the ground that it was excessive, but this court refused to reduce the sentence, stating:

"It is a well-known fact that criminals, engaged in committing crimes of this character, are potential murderers. Defendants were armed with deadly weapons, prepared to use and doubtless would have used them, had it been necessary to carry out their evil designs."

The statute under which the defendants were convicted provides, as a penalty, imprisonment in the penitentiary of from 3 to 50 years. Taking into consideration the enormity of the crime proved, and that the sentence imposed was less than one-third of the maximum penalty provided by statute, we are not disposed to reduce the sentence imposed by the trial court.

The judgment is

AFFIRMED.