CHESTER WILSHUSEN, ALIAS C. C. WILSON, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

31 N. W. 2d 544

Filed April 1, 1948. No. 32376.

*Colfer, Russell & Colfer,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Walter E. Nolte,* for defendant in error.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

WENKE, J.

Plaintiff in error Chester Wilshusen, alias C. C. Wilson, defendant below, brings this error proceeding from the district court for Red Willow County seeking reversal of his conviction of the crime of breaking and entering a liquor store with intent to steal property of value therein. His motion for new trial having been overruled, defendant was sentenced to serve two years at hard labor in the Nebraska penitentiary. We will refer to the plaintiff in error as defendant.

The principal complaint relates to the sufficiency of the evidence. Defendant contends that the evidence relating to his identity is not sufficient to establish his connection with the crime charged and that the evidence of extrajudicial admissions is not sufficient to warrant his conviction.

To sustain a conviction the evidence must show, beyond a reasonable doubt, that the crime was committed and that the accused was the person who committed the act, or aided, abetted, or procured another to commit it. If the State fails to do so, the charges should be dismissed.

The evidence establishes that shortly after midnight of April 27, 1946, the police officers of McCook, Nebraska, discovered that the Rutt liquor store located at 114 West First Street in that city had been broken into

and some 21 or 22 cases of liquor valued at between four and five hundred dollars taken therefrom. The entering had been accomplished by tearing off the screen door and breaking in a wooden door located in the rear of the building. This screen door had been secured by two hooks and the wooden door by a bar. The cases of liquor removed had been stacked just south and at the west end of a sheet-iron fence extending west from the north side of the building. This sheet-iron fence was about 20 or 25 feet in length, six feet in height and extended within five feet of the alley. The liquor store faces east and is located on the west side of First Street. To the north are vacant lots. They extend to B Street which is north of the block. These vacant lots are 100 feet in width north and south. To the west and in the rear is an alley.

After the discovery the police officers, including the sheriff of Red Willow County, placed themselves in position to try and apprehend the parties who had broken into the liquor store and removed this liquor should they return to get it. One officer concealed himself south of the sheet-iron fence and near the cases of liquor. The sheriff, later joined by a police officer and one of the owners of the liquor store, parked his car on the north side of B Street, facing west, just about five feet west of the east side of the alley back of the liquor store if extended north across B Street.

As the officers were thus awaiting what might develop a tan or light-colored Hudson coupé came down B Street from the west and drove south into the alley, which is in back of the liquor store. As it turned into the alley its headlights were turned off. It then drove onto the vacant lots just north of the liquor store. Then one of the men got out. He walked back toward the west end of the sheet-iron fence where the stolen liquor was stacked and as he did so the car backed up to the same spot. The man walking had a flashlight which he flashed on the cached cases of liquor.

As this was happening one of the officers in the sheriff's car got out and started across the vacant lots. As he did so the coupé suddenly started up. The driver "gunned" it northeast across the vacant lots, drove through a fence located on the east and part of the north side thereof, across the curb and then speeded east down B Street to Main Street, turned south on Main Street and out of sight., The officer who had rushed out onto the vacant lots fired two or three shots at the car as it speeded by. The man who had gotten out of the car ran east along the north side of the liquor store and disappeared after he entered First Street.

"The rule is that to sustain a conviction for a crime the corpus delicti must be proved beyond a reasonable doubt." Whomble v. State, 143 Neb. 667, 10 N. W. 2d 627.

"The corpus delicti is the body or substance of the crime, the fact that a crime has been committed without regard to the identity of the person committing it." Andersen v. State, 141 Neb. 306, 3 N. W. 2d 447.

That the corpus delicti, or the body or substance of the crime, which in its primary sense is the fact that the crime has actually been committed, was proved by sufficient evidence is beyond question. The question remaining is the identity of the person or persons who committed it.

For this purpose the State offered the evidence of the sheriff. He testified that as he was sitting in his car parked on B Street, which was well lighted by street lights, that a tan or light-colored Hudson coupé came down B Street from the west and drove past his car at a speed approximating some 12 to 15 miles per hour; that the coupé was only occupied by the driver whom he observed; that later the same tan or light-colored coupé again came down B Street from the west and turned into the alley back of the liquor store; that it was then occupied by two men but the same man was driving; and that he again had the opportunity of observing him. Later, on July 14, 1947, while he was

being held in custody in the Federal Building in Pittsburgh, Pennsylvania, the sheriff identified the defendant as the driver of the tan or light-colored Hudson coupé and did so at the time of the trial.

The evidence shows that the sheriff had two opportunities to observe the driver of the car. Where an accused is identified by a witness who has had a reasonable opportunity to observe him such evidence is admissible and the probative value of such evidence is a question for the jury. See Buckley v. State, 79 Neb. 86, 112 N. W. 283; Lee v. State, 124 Neb. 165, 245 N. W. 445; Froding v. State, 125 Neb. 322, 250 N. W. 91; 23 C. J. S., Criminal Law, § 864, p. 73.

The sheriff further testified to voluntary admissions made by the defendant while they were returning from Pittsburgh, Pennsylvania, in the sheriff's car. The sheriff testified that defendant said he wished somebody would have "hollered" that they were the law, for he did not realize they were officers; that he had abandoned the car near Borger, Texas; that he looked for bullet holes in the car but did not find any; and that he asked what had ever been done to the other party.

It should here be stated that early on the morning of April 28, 1946, Jack B. Ponder was arrested in McCook and confined in jail for several days but was never charged with this crime but released to the California authorities for parole violation.

"Voluntary statements made by an accused to officers, while he is under arrest and in custody, tending to show his connection with the commission of the alleged crime, are admissible in evidence against him." Fields v. State, 125 Neb. 290, 250 N. W. 63. See, also, Mantell v. State, 141 Neb. 15, 2 N. W. 2d 586.

While, as stated in Whomble v. State, *supra*: "Extrajudicial admissions against interest by one charged with a crime must be received and considered with caution

and are not sufficient of themselves to support a conviction."

Nevertheless, as stated in Fields v. State, *supra*: "This court has held on numerous occasions that, after the corpus delicti has been sufficiently established, voluntary confessions or statements made by the accused may be admitted in evidence for the purpose of connecting the accused with the commission of the offense. Ashford v. State, 36 Neb. 38; Bode v. State, 80 Neb. 74; Fouse v. State, 83 Neb. 258; Johnson v. State, 88 Neb. 565; Hardin v. State, 92 Neb. 298; Witty v. State, 105, Neb. 411."

We think what was said in Andersen v. State, *supra*, as to extrajudicial confessions is applicable to extrajudicial admissions. Therein we said:

"Where corpus delicti is proved, an unsupported extrajudicial confession may be sufficient to prove the defendant's connection with the criminal act.

"A person charged with a felony may not be convicted upon his unsupported extrajudicial confession that a crime has been committed, but such confession may be sufficient to prove his connection with the criminal act."

We find the evidence adduced at the trial sufficient to support the jury's verdict and that the conviction should be affirmed.

AFFIRMED.