CLAUDE FORNEY V. STATE OF NEBRASKA.

FILED APRIL 29, 1932.   No. 28217.

*D. Van Donselaar* and *P. F. Verzani,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

PAINE, J.

This is a writ of error to the district court for Wayne county. The plaintiff in error, Claude Forney, hereafter called the defendant, was convicted of the felonies set out in sections 69-109 and 69-110, Comp. St. 1929, commonly known as selling and removing mortgaged property, which offenses were set out in five counts in the information, and the jury returned a verdict of guilty upon counts 2, 3, 4, and 5, and the district court entered a sentence of two years in the penitentiary upon each of four counts, said sentences to run concurrently.

The information charged that a mortgage was given to Sam Wertheimer and Sol L. Degen, doing business as the firm of Wertheimer & Degen, and the mortgage was given to the partnership. It is charged that the defendant mortgaged 50 head of white face steers, dehorned, of the average weight of 517 pounds, with a U brand on the left hip, to Wertheimer & Degen to secure the payment of $2,921.07. It is charged in count 2 that one white face steer, so branded and weighing 870 pounds, was sold by the defendant without first securing the consent of the mortgagees thereto in writing. The evidence may be set out briefly as follows: Ray Wenzel, who drove a truck, and who stated that he was sometimes known as Art Clymor, and lived at Norfolk, testified for the state that the defendant, Forney, told him to take a steer along with him to Sioux City and sell it, and when he got back defendant told him to keep the money on what defendant was owing him. Wenzel said defendant did not trade the steer to him on the account, and he did not buy the steer from defendant. He delivered the steer to the Walsh Commission Company, and received the money from Walsh, then made the settlement with Forney. It was charged in count 3 that the defendant, without the consent of the mortgagees, sold and transferred one of the above steers, which weighed 1,060 pounds, to Art Clymor,

a name under which Ray Wenzel sometimes went; and in count 4 of the information it was charged that the defendant, Forney, removed eight head of white face steers, above described and so branded, out of and away from Wayne county, Nebraska, without first securing the consent of the mortgagees in writing; and in count 5 of the information it was charged that the defendant, without the consent of the mortgagees, did remove three head of said white face steers out of and away from Wayne county, Nebraska.

James Jensen saw the defendant April 1, 1930, in Omaha, and testified to selling 30 head of white face cattle, a part of the 50 head under the mortgage. Sol L. Degen testified that the firm of Wertheimer & Degen carries on business at the Union Stock Yards, South Omaha, having been in business there for 30 years; that he sold Mr. James Jensen 50 head of yearling steers April 8, 1930, and Mr. Jensen bought these cattle for the defendant, Clyde Forney, and they were shipped to the defendant, who signed the chattel mortgage given on them to the firm, upon April 8, 1930, which mortgage was duly filed in Wayne county, Nebraska, upon April 12, 1930, for the sum of $2,921.07. On March 1, 1931, 30 of the same cattle were shipped back to the Union Stock Yards at South Omaha by the defendant and sold for $1,991.51, leaving a balance due of $1,146.95.

Tom Dunn, a trucker, testified that on November 23, 1930, he got four of these white face cattle out of defendant's feed yard and took them to Sioux City, where he unloaded them in the stock yards; that on February 3, 1931, the defendant met him on the street and told him that he wanted to send three steers down to Sioux City, and to come out in about an hour, which Mr. Dunn did, and they loaded up three steers about 9 o'clock at night and took with them a small calf, all of which were delivered to the stock yards in Sioux City the next morning, and that the defendant rode with them to Sioux City and return on this trip.

Ray Wenzel testified that he had lived in Wayne county and was usually known there as Wenzel, but that he was also known as Art Clymor; that he had known the defendant for three or four years, having picked corn for him, and that his wife had also worked for the defendant, and had sold him chickens; that upon January 5, 1931, witness had planned to take some hogs to Sioux City, and the defendant asked him to take a steer along, and that he took his own hogs and the steer of the defendant to Sioux City, shipping them by some trucker from Wakefield, whose name he does not know, but that he drove down in his own car and sold the steer and hogs to the Walsh Commission Company upon January 5. That about February 26, 1931, when he was shipping some of his own hogs to Sioux City by truck, the defendant told him to take down another steer, and he went over and loaded in the first steer that he could get hold of with his hogs, sold it, and got the check in his name and kept it for money that Forney owed him.

M. K. Berman testified that November 23, 1930, he sold eight head of white face cattle for the defendant, and identified a check, dated November 24, 1930, payable to Claude Forney, Wakefield, Nebraska, for $458.41, sold by Rice Bros., live stock commission firm of Sioux City, Iowa. Mr. Berman, salesman for Rice Bros., testified that he sold three head of cattle as salesman for Rice Bros. Live Stock Commission Company, Sioux City, Iowa, and identified a check given in payment thereof to Claude Forney, Wayne, Nebraska, upon February 4, 1931, for $152.77.

Frank Tyler testified that he had lived in Omaha for 30 years, and had been with the firm of Wertheimer & Degen for about 20 years; that upon February 22, 1931, he went to the farm of Claude Forney to check up the cattle on the loan, and when he counted the cattle he found that only 30 of the mortgaged cattle were there, and inquired of defendant what had become of the remainder. The defendant told him that some of them must have got out in the field; that he thought three of them had died, and that perhaps two or three had been stolen. Mr. Tyler was un-

able to obtain any information from defendant as to the rest of the cattle, and the 30 head remaining were shipped to South Omaha and sold, and credited upon the note and mortgage.

■ ■ The defendant insists that, when the information contains two counts which charge separate and distinct felonies, the state should be required to elect, and cites *Blair v. State,* 72 Neb. 501, which held that the court might, in the exercise of sound discretion, require the county attorney to elect upon which count he would rely for conviction before the accused would be required to make his defense. To this the state replies that, while the trial judge may require such election, it is not the duty of the court to compel the prosecutor to elect in every case. *Cohoe v. State,* 82 Neb. 744.

A joinder in one indictment, in separate counts, of different felonies, of the same class and subject to the same punishment, does not, by reason of such joinder alone, make it the duty of the court, upon motion of the accused, to compel the prosecutor to elect upon what one of the charges he will go to trial. *Korth v. State,* 46 Neb. 631; *Bartley v. State,* 53 Neb. 310; *Sheppard v. State,* 104 Neb. 709. This is a matter resting in the sound discretion of the trial court, and the determining question in each case is whether the defendant has been embarrassed or confounded in making his defense. *Baker v. State,* 109 Neb. 558; *Luke v. State, ante,* p. 101.

■ ■ It is alleged as reversible error that, in counts 2 and 3 of the information, it is charged that the defendant, in Wayne county, Nebraska, unlawfully, knowingly, wrongfully, and feloniously, *did sell and transfer* certain steers covered by the mortgage set out, and that the evidence disclosed that the steers charged in each of said counts were transported from Wayne county by truck and sold in each instance at the stock yards in Sioux City, Iowa; that, after the state's evidence was introduced, the court erred in failing to sustain defendant's motion to direct an acquittal as to these two counts.

It is true that a state usually has no jurisdiction to punish crimes committed beyond its limits. 16 C. J. 162. "It was a rule of the common law that, when an offense was constituted by a series of acts, a part of which were done in one county and a part in another, there could be no prosecution in either, unless so much was done in the one as would constitute a complete offense." 16 C. J. 195. See 4 Blackstone's Commentaries, 303. However, this has now been changed by statute in England, and in these days, when mortgaged automobiles can cross the state lines in a few hours for sale there, and with new questions arising concerning the venue of crimes and torts connected with airplanes which do not stop within the state where jurisdiction is demanded, we are confronted by new conditions. See article on "Jurisdiction over Crimes Committed in Air," 2 So. Cal. Law Review, 483.

In our Bill of Rights, a defendant is protected in his right to have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. Const. art. I, sec. 11. And this right is protected by section 29-1301, Comp. St. 1929. But it may be mentioned in passing that this right of jury trial has been uniformly held to apply only to cases in which the right existed at common law. *People v. Martin,* 188 Cal. 281, 21 A. L. R. 1399.

In New York it has been held that, when a part of the acts constituting a crime are committed in a foreign state, it is sufficient if the transaction would be a crime if committed entirely within the state. *People v. Zayas,* 217 N. Y. 78, Ann. Cas. 1917E, 309.

This court has had before it many times prosecutions for larceny where property is stolen in one county and taken by the thief into another county, and it has been held that he may be prosecuted and convicted in either county. *Hurlburt v. State,* 52 Neb. 428. This court has further held that, in a prosecution for embezzlement of a right of action, the venue is properly laid in the county where the purpose is formed to convert the right in action and the decisive steps taken to carry out that purpose, al-

though the subject of the right of action is situated in another county. *Higbee v. State,* 74 Neb. 331.

It was held in *State v. Gorman,* 113 Kan. 740, that where a defendant ships mortgaged property outside the state, with the intent of selling the same in another state, he may be punished in the county from which the shipment was made, and in the same case it was further held that shipping mortgaged property out of the state, with the purpose of selling it there, amounts to disposing of it in the state, within the meaning of the statute making it a public offense to sell or dispose of mortgaged chattels with intent to defraud. It was thus held that the offense was punishable in the county from which such shipment is made, notwithstanding the state line was crossed from another county; and also held that the evidence will uphold a charge of selling and disposing of the property, whether or not it would have warranted a conviction if the charge had been merely of selling.

"We think that removal of property from the jurisdiction of the state with the purpose or necessary effect of defeating the mortgage lien is such a disposal of property as falls within the meaning of the statute. If intention to defeat the lien is essential, one must be presumed to intend the necessary consequences of his voluntary acts." *State v. Haynes,* 74 S. Car. 450.

"The Iowa statute, providing that if any mortgagor of personal property, while the mortgage remains unsatisfied, shall wilfully sell or dispose of the property without the mortgagee's written consent, he shall be guilty of larceny, etc., covers the case of a sale in Iowa of personalty mortgaged to residents of that state, though the mortgage was executed, delivered and filed in another state by nonresidents of Iowa." *In re Renshaw,* 18 S. Dak. 32, 112 Am. St. Rep. 778.

Section 69-109, Comp. St. 1929, provides generally that, if any person shall sell, transfer, *or in any manner dispose of* personal property which has been conveyed to another by mortgage, without first procuring consent of holder of the mortgage in writing, he shall be guilty of a felony.

In the case at bar, we find that the information in apt language charges in counts 2 and 3 that the defendant feloniously *"did sell and transfer"* certain live stock. It is possible that, under the authorities cited, if the information had also charged that the defendant did sell, transfer, *and dispose of* the steers in question, his conviction could have been upheld upon the ground that when the defendant loaded the mortgaged steers into a truck whose only destination was the stock yards at Sioux City, and whose instruction was to sell them in the morning and bring him back the proceeds, it would doubtless have been within the authorities cited to have held that such act of loading them in Wayne county for sale in Iowa would have been a sufficient *disposal of them* in that county to have warranted his conviction thereof. However, under the facts in the case and the language of the information, we hold that the judgment and sentence under counts 2 and 3 should be, and the same are hereby, set aside, reversed and the counts dismissed.

Error is charged in the giving of several instructions, and while the language used might have been improved and made more definite in some respects, we see no reversible error therein, and suggest that if the defendant's counsel had submitted better instructions they might have been used by the court.

Complaint is made of the interest and activity of the attorney employed by the mortgagees to collect the balance due on the note and mortgage. We are not able to find that any of this activity occurred in the presence of the jury, and his statement to the attorneys for the defense that there was no use of their making a defense, as, in his opinion, a conviction would result, was merely brotherly advice between lawyers. While he was present at one time in the county courtroom when the defendant was there under arrest, and while he testified in the trial in the district court as a witness, we see nothing in the conduct of this attorney that was prejudicial to the rights of the defendant.

A definite, positive charge is made in count 4 of the information that the defendant, Claude Forney, mortgaged certain white face yearling steers and on or about November 23, 1930, during the existence of the lien created by said mortgage, he did then and there unlawfully, wrongfully, knowingly, and feloniously remove eight head of said white face yearling steers out of and away from the county of Wayne, in the state of Nebraska, and that said illegal and unlawful removal was done by the defendant with the intent to deprive the mortgagees of their security.

In count 5 it is definitely charged that on February 3, 1931, the defendant, in the same manner and under the same conditions, removed three more head of said white face yearling steers from Wayne county, Nebraska, with the same felonious intent of defrauding the mortgagee. The jury found the defendant guilty of the crime charged in said counts 4 and 5, herein set out, and thereafter, upon November 24, 1931, the motion for a new trial being overruled, the said defendant was sentenced to be confined in the penitentiary for a term of two years upon each of said counts, and it was directed that said sentences should run concurrently.

We have examined the other errors set out in the brief of defendant and, finding nothing prejudicial to the defendant therein, will not extend this opinion to the length necessary to discuss in detail each of the 24 assignments of error.

There being no error in the information concerning counts 4 and 5, and the record being without error in reference thereto, the sentence thereunder being as provided by law, it is hereby directed that the judgment and sentence relating to said counts 4 and 5 be in all things affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.

ROSE, J., concurs in the result.