MARIE MANTELL V. STATE OF NEBRASKA.

2 N. W. (2d) 586

FILED FEBRUARY 13, 1942. No. 31215.

16

*C. E. Walsh,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Herbert T. White, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

The defendant was properly charged in the first count of the information with shooting with intent to wound, and in the second count with shooting with intent to kill. The jury returned a verdict of guilty on the first, and not guilty on the second, count. After the overruling of the motion for a new trial, defendant was sentenced to three years in the women's reformatory in York, Nebraska. From this

verdict and judgment thereon, she prosecutes a petition in error and requests a review of her trial.

The defendant, a young woman, had for over two years, or longer, been living with one Herbert Toole. They had had some difficulty, and on June 21, 1940, they decided to separate. They had supper together that evening, and he was to meet her at 8 o'clock between Patrick and Blondo streets on Twenty-fourth, in Omaha. Toole did not keep this engagement, but instead went to a place known as Rabes Tavern between Twenty-third and Twenty-fourth streets on Lake, arriving there, first, at about 7:30, then leaving and returning to the tavern at 9 o'clock. He walked to the back of the tavern, started for the rest room, saw two women acquaintances, and sat down with them to drink beer.

At about 9 o'clock that evening a taxicab driver picked up the defendant at Sixteenth and Cass streets; she directed him to take her to the north side. After she was seated in the cab she immediately began talking about a gun. This conversation led to the sale of an Iver Johnson .38 for the sum of $4 to defendant by the taxicab driver, and they proceeded to his home to procure it. The gun was loaded with five shells. After purchasing the gun, defendant directed the driver to take her to Twenty-fourth and Lake streets. The record discloses that she went to the Rabes Tavern, located on the south side of the street, with a north entrance and a door to the rear. She sent a man into the tavern to tell Toole that "a lady out at the back" wanted to see him. Toole asked who it was, and the reply was "Marie." Toole arose and started out of the tavern. The defendant fired three shots, one of which struck Toole "underneath the right nipple." The gun was thrown on a garage roof where defendant said it could be found. It was later found there. She left, and Toole was removed to Nicholas Senn Hospital. Subsequently, defendant visited him at the hospital and conversed with police officers about the shooting, saying that she had shot him. This statement was corroborated in her presence by Toole, who said she was the girl who shot him.

The defendant made oral statements about the shooting on the night thereof to the police officers after they had taken her into custody. She subsequently made a written statement concerning the shooting to the county attorney in the police station in Omaha. All of the testimony offered by the state discloses that defendant had been properly warned that statements she made might be used against her, and that she had a constitutional right to refuse to answer any question.

Objection is made to the admission in evidence of the voluntary statements made by defendant and of the written statement. A careful analysis of the record in this respect discloses the pertinency of the general rule as pronounced in *Bush v. State*, 112 Neb. 384, 199 N. W. 792, in which the court said: "The general rule is that, before a confession may be received in evidence, it must be shown that it was freely and voluntarily made. However, we think the statements do not amount to a confession, but are merely statements against interest, or what may be strictly termed inculpatory statements."

In the case of *Fields v. State*, 125 Neb. 290, 250 N. W. 63, this court held:

"Voluntary statements made by an accused to officers, while he is under arrest and in custody, tending to show his connection with the commission of the alleged crime, are admissible in evidence against him.

"It is not error for a trial court to permit a stenographer, who recorded the voluntary statements of the accused in shorthand, to read from the witness-stand the shorthand notes, if such statements, when extended to script or print, would be admissible."

The defendant had no hesitancy in making the statement that she shot Toole and in stating the reason for shooting him,—"I wanted to hurt him like he has hurt me in the past. Q. How did he hurt you? A. By going out with other girls and making me hustle." We see no merit to the contention, raised by defendant, as to the admissibility of such evidence against her.

Toole, after having made voluntary statements, taken by a competent shorthand reporter at the hospital, as to his living with the defendant, their difficulties, and that she was the girl who had shot him, remained in the hospital for a period of five days. Subsequently, he went back to live with the defendant. When he was called as a witness for the state, he testified that he could not see who shot him and that he did not remember; it was dark outside. No doubt exists that he was doing his best to protect the defendant. Without detailing the sordid testimony, the record shows that the defendant supported him by prostitution and was jealous of him because, as she stated, he had other girls "hustling for him." We believe the foregoing facts are sufficient for a determination of this case without further recital of the evidence.

The defendant contends that on *voir dire* examination counsel for the state asked a juror, in substance, whether or not the fact that defendant is a white girl and the man whom she shot is of colored extraction would influence him in rendering a fair and impartial verdict. The contention is that this statement by counsel for the state would prejudice the juror, either against the state or against the defendant, in arriving at a verdict. Objection was made by defendant to the statement, in that it was prejudicial.

The evidence discloses that Toole's father was of Irish descent and his mother was a Creole. The juror was passed for cause, and, after the jury were selected, defendant's counsel moved the court to discharge the jury and declare a mistrial for the reason that the statement made by the county attorney was prejudicial to the interest and rights of the defendant. There is nothing prejudicially erroneous in the statement, and the contention is without merit.

Pictures taken by police photographers of the tavern and of the alleged bullet holes and marks in the wall were objected to for lack of proper foundation, in that there was no evidence to show that the marks in the wall were actual bullet holes, or that they had not been there immediately before the alleged shooting. While the foundation for the

pictures was apparently not in continuity, it was finally shown to be sufficient, within the discretion of the court, to warrant their admission in evidence. We conclude, upon an examination of the record, that there was nothing in the court's ruling in admitting the pictures that was prejudicial to the interest of the defendant.

Exception is taken to statements made by the trial court when Toole, on his direct examination, failed to remember anything about the shooting. He repeatedly answered: "I don't remember." The trial court made this statement: "It might be proper for the Court to advise the witness that witnesses who are sworn to testify in court under oath, it is the purpose and intention of that law for them to tell the truth, and one telling what is not true while testifying as a witness is liable to very serious penalties in this State if that charge can be proved. You may proceed."

There was no objection made to the remarks of the court. Defendant's counsel objected to any further questioning as to what happened at the hospital, for lack of foundation, for the reason that the state failed to show, by competent medical testimony, the state of mind or physical condition of Toole at the time the purported questions were asked and the answers given.

We deem it unnecessary, under the circumstances, to first lay a foundation by a medical expert as to the state of mind or condition of Toole. If the record discloses that Toole voluntarily made the statements and was not coerced or induced under threat to make them, and was rational and competent at the time, there would be no reason why this testimony would not be competent, especially so when later, after leaving the hospital, Toole again lived with the defendant and, on his direct examination on the trial of the cause, failed to remember anything about the shooting, in so far as she was concerned. Obviously, he was a hostile and unwilling witness.

In *Bernhardt v. Chicago, B. & Q. R. Co.*, 132 Neb. 346, 272 N. W. 209, this court held: "Where a party calling a witness is surprised by such witness refusing to testify to a

state of facts which he has led such party to believe he would, the one surprised by such testimony may impeach such witness, upon proper foundation, by showing that the witness, to other persons, at another time, made inconsistent statements; such impeaching testimony cannot be considered substantive evidence, but only as it affects his credibility."

The defendant complains that the court did not submit to the jury the offense of assault and battery, or simple assault, contending that such offense is incorporated in assault with intent to kill or assault with intent to wound. The evidence in the instant case is definitely of such a nature that the offense of simple assault or assault and battery should not be submitted to the jury.

Other assignments of error are without merit. The verdict of the jury and sentence of the court are

AFFIRMED.