EDWIN G. SEVERIN, PLAINTIFF IN ERROR, v. THE STATE OF
NEBRASKA, DEFENDANT IN ERROR.

20 N. W. 2d 377

FILED NOVEMBER 2, 1945.   No. 31964.

*Hugh J. Boyle,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, *Carl H. Peterson,*
and *H. Emerson Kokjer,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

The plaintiff in error was convicted of the crime of em-
bezzlement under section 28-538, R. S. 1943, and sentenced
to serve one year in the state penitentiary. For convenience

the plaintiff in error will be referred to herein as the defendant.

The record shows that the defendant was a real-estate dealer living in Omaha. In July 1942, he came to the farm home of Clarence Brokaw near Foster in Pierce County to interest him in the purchase of a ranch. In the furtherance of this purpose he took Brokaw and his wife to Bassett and showed them a ranch owned by A. H. Rutan. A few days later on July 13, 1942, Brokaw gave defendant his check for $100 as earnest money on the ranch deal. A contract was drawn up which was never executed. On August 5, 1942, defendant again called on Brokaw, informed him that the contract which had previously been drawn up was unsatisfactory to the seller and prepared another for signature, which was signed by Brokaw only. A second check for $100 was given to the defendant with the understanding that it was to be paid on the purchase price. On October 15, 1942, defendant again called on Brokaw, signed the contract of sale of the Rutan ranch made out with defendant as seller and Brokaw as purchaser, with the explanation, as recited by Brokaw, that "he had to buy it in his own name in order to get his commission out of it, and then turn it to me." Brokaw delivered a third check to defendant for $800, the balance of the cash then required to be paid. The record further shows that defendant entered into a contract of purchase with Rutan whereby he contracted to purchase the ranch for a sum less by $1,300 than the amount for which he had contracted to sell it to Brokaw. Defendant paid $500 to Rutan under his contract with him, but failed to pay the other $500, due under the contract, with the result that the first $500 was forfeited and the ranch sold to another. Defendant commenced a suit to compel Rutan to specifically perform his contract which was settled by defendant receiving back the $500 cash payment made by him when he contracted with Rutan for the purchase of the land.

The evidence shows that Brokaw had never met Rutan during the course of the transaction and that Rutan did not know that any one except the defendant was interested in

the purchase of the ranch. An officer of the bank at Bassett, the place where the papers were to be held in escrow and the transaction finally closed, testified that he was never informed that Brokaw was interested in the transaction, he believing from the conversations of defendant that defendant was the only one interested in making the purchase.

It is the theory of the state that defendant undertook to purchase the ranch as the agent of Brokaw, came into the possession of $1,000, which was to be used in making the purchase and then appropriated $500 of it to his own use with intent to defraud Brokaw.

The defendant says that he contracted to sell the ranch to Brokaw and that he informed Brokaw that he had to negotiate for its purchase before he could sell it to him. He says he entered into the contract with Rutan for its purchase, paid down $500 in cash, and agreed to pay in the additional $500 when Rutan and his wife executed a warranty deed to be placed in escrow at the bank. Defendant says that the deed was never executed and for that reason the additional $500 was not paid over. He further testifies that he became ill, was hospitalized and operated upon and confined to his home during a convalescent period, with the result that he became in default of payment of the second $500 required by the contract to have been paid on November 15, 1942. In December 1942, Rutan sold the ranch to a third party. Defendant never paid the money back to Brokaw. The theory of the defense is that the only relationship existing between the defendant and Brokaw was that of seller and purchaser and that defendant was at no time the agent of Brokaw.

There is evidence in the record from which a jury could properly find that defendant was the agent of Brokaw. If, as the defendant testifies, defendant was purchasing the ranch from Rutan for himself, there would have been no occasion for him to contact Brokaw when Rutan allegedly refused to execute the first contract as drawn. The record is clear that he demanded and received checks for $100, $100, and $800 to be paid on the purchase price of the ranch

in buying it from Rutan. Defendant says that the first contract was torn up because it was unsatisfactory to the seller of the ranch, a statement which the seller denies. Defendant stated that he was taking it in his own name to protect his commission, when the record shows that he was not the agent of Rutan and that he then had no interest in the property to protect. We think the evidence is sufficient for a jury to find that defendant accepted the $1,000 from Brokaw as the agent of Brokaw in negotiating for the purchase of the ranch for Brokaw. It is evident that he discovered that the ranch could be purchased for less than Brokaw was willing to pay for it and the scheme recited was resorted to as a means of gaining an additional profit. The difficulty arose when defendant, after receiving $1,000 from Brokaw, appropriated $500 to his own use and did not have that amount when it became due under the contract he had made with Rutan. Whether defendant received the money as agent of Brokaw or as the seller of the property is clearly a question for the jury. The jury found that he received it as the agent of Brokaw and converted it to his own use. The evidence is amply sufficient to sustain the jury's verdict in this respect. The case is very similar on the facts to that of *Matters v. State,* 120 Neb. 404, 232 N. W. 781.

The applicable rule is: "This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." *Williams v. State,* 115 Neb. 277, 212 N. W. 606; *Buckley v. State,* 131 Neb. 752, 269 N. W. 892.

It is urged that the evidence is insufficient to sustain a finding that the crime was committed in Pierce County where the case was tried. This court has held, in effect, that in a prosecution for embezzlement the venue is properly laid in the county where the purpose is formed to convert the property or money to the use of the person charged, accompanied, of course, by acts taken in the furtherance of the purpose. *Higbee v. State,* 74 Neb. 331, 104 N. W. 748;

*Forney v. State,* 123 Neb. 179, 242 N. W. 441. It is necessary, of course, that there be evidence that defendant intended to embezzle the money in Pierce County. The intent with which an act is committed is purely a mental process and difficult to establish by direct proof. It is generally a conclusion that must be drawn after a consideration of the actions of the defendant, viewed in the light of all the surrounding circumstances. *Buckley v. State, supra.* The information fixed the venue in Pierce County. The transaction between defendant and Brokaw took place largely in Pierce County. The three checks totaling $1,000 were signed and delivered to defendant in Pierce County. The relation of principal and agent which the jury found to exist was entered into in Pierce County. That the intent to embezzle was conceived in Pierce County, where the possession of the $1,000 in checks was obtained and representations and actions made and done in furtherance of the crime, is a deduction which a jury could properly draw from the evidence adduced. See *Jurgensen v. State,* 135 Neb. 537, 283 N. W. 228. While it is true that there is conflicting evidence in the record from which a jury might come to a contrary conclusion, yet we think there was ample evidence to sustain the conclusion reached that the intent to embezzle was formulated in Pierce County.

Error is claimed in the giving of instruction number ten by the trial court. The portion of the instruction complained of provides as follows: "The State contends that the defendant as the agent and clerk of Clarence Brokaw received a total of approximately $1,000. and that the defendant intended to and did embezzle and feloniously convert to his own use the sum of $500 thereof. Proof of either the reception or embezzlement of the money as alleged in the information, if any, must be of acts committed on approximately the dates alleged. It is not necessary for the State to prove that a clerk or agent received the whole of the amount alleged to have been embezzled, in one transaction, nor on any particular day. You are entitled to consider the aggregate sum of moneys received by such clerk or agent

and embezzled by him, if such you find, but not more than the sum alleged." The objection advanced is that the particular $500 embezzled is not specified by this instruction. We do not think there is merit to the objection. It is true that $1,000 came into the possession of defendant through the medium of three checks totaling $1,000, each of which was given at a different time. The evidence shows that $500 was used in the real-estate transaction, though possibly not in the exact manner that Brokaw, the principal, intended. In any event, the defendant had $500 in addition thereto which he converted to his own use. It does not seem important whether the $500 retained and converted came into the defendant's hands through the medium of any particular check or checks. The information charges that on or about October 15, 1942, the defendant, in Pierce County, as the agent of Brokaw, received $500 belonging to Brokaw which he subsequently fraudulently, unlawfully and feloniously converted to his own use without Brokaw's consent. We fail to see that it is at all material, as the trial court charged, what the source of the particular funds was which were alleged to have been converted on or about March 1, 1943, other than that they came into the defendant's possession as the agent of Brokaw on or about the time charged. After the proceeds of the checks aggregating $1,000 were commingled, it would be utterly impossible to determine which $500 was properly accounted for and which feloniously converted. We think that the criticized instruction was free from prejudicial error.

Having found no prejudicial error in the record, the judgment of the trial court is affirmed.

AFFIRMED.