GEORGE FIELDER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

33 N. W. 2d 451

Filed July 16, 1948. No. 32390.

*J. E. Willits,* for plaintiff in error.

*Walter R. Johnson,* Attorney General, and *Walter E. Nolte,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

Plaintiff in error, hereinafter called defendant, was found guilty of manslaughter by a jury in the district court for Adams County, Nebraska. He was sentenced to the Nebraska State Penitentiary, and prosecutes error

to this court. The defendant's principal assignment of error is that the evidence is insufficient to sustain his conviction. We proceed to a discussion of this assignment of error.

Section 28-403, R. S. 1943, defining the crime of manslaughter reads as follows: "Whoever shall unlawfully kill another without malice, either upon a sudden quarrel, or unintentionally, while the slayer is in the commission of some unlawful act, shall be deemed guilty of manslaughter; * * *."

This court held, in Benton v. State, 124 Neb. 485, 247 N. W. 21, that: "When one drives an automobile in violation of law pertaining to the operation of such vehicles on the public highway and in so doing, as a result of the violation of law, causes death to another, he is guilty of manslaughter." See, also, Schultz v. State, 89 Neb. 34, 130 N. W. 972, 33 L. R. A. N. S. 403; Crawford v. State, 116 Neb. 125, 216 N. W. 294; Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111; Puckett v. State, 144 Neb. 876, 15 N. W. 2d 63; Annotation, 30 A. L. R. 66.

The record discloses that the accident occurred at approximately 11 p. m. on September 15, 1947, at the intersection of E Street and Burlington Avenue in the city of Hastings, Nebraska. Burlington Avenue runs in a north and south direction, is practically level, and is part of highways Nos. 34 and 281 in that vicinity. It is an arterial highway heavily traveled, with stop signs on each side of the intersection and stop lights at some intersections. It consists of concrete pavement 42 feet in width from gutter to gutter. E Street runs in an east and west direction, is 35 feet in width, graveled to the west of the intersection and paved with black top to the east. There is a stop sign 37 feet west of the center line of the intersection at the point of Burlington Avenue. As shown by exhibit 12 appearing in evidence, the Cornelius house is 130 feet from the southwest corner of the intersection and is 30 feet west of the curb. The Missouri Pacific tracts are located six

hundred feet south of the intersection of Burlington Avenue and E Street, with a clear vision from the tracks to the north to the intersection. At the southwest corner of the intersection to the west of Burlington Avenue are some trees the limbs of which hang close to the ground on the west side and partially obstruct the view to the south. On the southeast and northwest corners of the intersection are two city electroliers that furnish light. The intersection is well lighted. On the northwest corner of the intersection of Burlington Avenue and E Street is a service station; and there is a house just east of Burlington Avenue and north of E Street on the northeast corner of the intersection facing west.

The defendant, prior to the time of the accident, left his brother's home after having an altercation with his wife, and proceeded in his truck east on E Street to Burlington Avenue. His truck was a 1938 Ford V-8 with a stock and grain combination body, and was 21 feet eight inches in length, weighing 6,060 pounds and equipped with dual wheels and tires 7.50 by 20, 10 ply. He was followed by a police cruiser containing two police officers and his brother. His brother had complained to the police about the defendant, and as a consequence they were searching for him. When he arrived at the stop sign at the intersection, he testified he stopped and proceeded east across the intersection at a speed of from five to seven miles per hour.

Both police officers testified that the defendant did not stop at the stop sign. One gave as his opinion that the defendant proceeded across the intersection at a rate of speed of 20 miles per hour; the other that he was driving very slowly. Defendant's brother estimated the speed of the truck at that time to be between five and ten miles per hour. There was no violation of speed on the defendant's part in crossing the intersection.

When the back wheels of the defendant's truck were approximately six feet east of the intersecting line of Burlington Avenue, and this evidence is not disputed,

a 1946 Ford V-8 coach, driven by one Paulsen and in which William J. McKenna was riding, struck the rear of the box of the truck and the rear right dual wheels. The police officers were unable to estimate the speed of the Paulsen car, and said that it was about 50 feet distant from the defendant's truck when they first saw it. One of the officers saw a flash of light and heard a crash which he described as happening within the "twinkling of an eye." At the time of the collision the police cruiser was 50 to 75 feet west of the intersection.

The defendant's brother testified he saw the collision, and the impact completely turned the defendant's truck around, knocking it a distance of approximately 20 feet, the truck weighing 6,060 pounds. Its position after the collision was on the terrace of the northeast corner of the intersection, facing northwest. The evidence shows that the Paulsen car, at the time of the impact, turned and whirled around in a northwesterly direction, rolled backwards northward on Burlington Avenue a distance of approximately 130 feet and, when stopped, was sitting in an east and west position in front of what is referred to as the Cornelius house. The occupants of the house on the northeast corner of the intersection were awakened by a spare tire from the truck striking the house.

The evidence is replete with the violence and force of the crash. Exhibit 6 shows almost complete demolishment of the right front and right side of the Paulsen car. The impact drove the right rear dual wheels of the truck together, after striking the rear box of the truck.

Paulsen testified that he was driving north on Burlington Avenue on the right side thereof, at a speed of 25 miles per hour at the time of the accident. The evidence of speed of the Paulsen car must give way to the physical facts shown by the result of the collision. It is utterly inconsistent with such results. See Schultz v. State, *supra*. He had lights on his car, and his car was equipped with hydraulic brakes which he applied.

The evidence shows these brakes to be defective, and that the car would not come to a complete stop unless the brake lever was pumped fast. The vision of the driver of the Paulsen car was unobstructed for a distance of 600 feet on a well-lighted arterial highway.

The defendant, due to the impact, was hurled from his truck, lighting on his head, and was in a dazed condition. Testimony was given as to the condition of Paulsen and McKenna. All three were removed to a hospital. As a result of injuries sustained, McKenna died.

The police officers testified that the defendant's breath smelled of intoxicating liquor. There is no competent evidence in the record that the defendant was intoxicated or driving his truck while in an intoxicated condition at the time of the collision. The submission of this phase of the case to the jury constituted prejudicial error.

The contention of the defendant is that under the evidence the physical facts are so conclusive as to the speed of the Paulsen car that no other deduction can be reached except that the negligence of Paulsen was the direct and proximate cause of the death of McKenna.

We are concerned only as to whether or not the evidence was sufficient to warrant the submission thereof to the jury to determine whether the defendant was guilty of manslaughter as defined in section 28-403, R. S. 1943.

The following statutory provisions are self-explanatory and have been considered in connection with section 28-403, R. S. 1943, to determine whether or not the defendant was in the commission of an unlawful act at the time of the collision.

Section 39-728, R. S. 1943, provides: "Motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right, and shall have the right of way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time.

In all other cases the vehicle reaching the intersection first shall have the right of way."

By section 39-729, R. S. 1943, power is conferred upon the proper authorities, in order to further promote safety, to erect and maintain stop or warning signs at intersections of streets and highways.

Section 39-732, R. S. 1943, provides that the violation of sections 39-728 and 39-729, R. S. 1943, constitutes a misdemeanor and fixes the penalty in the form of a fine of not less than ten dollars nor more than twenty dollars.

The undisputed evidence shows that the defendant's truck was in the intersection first. Paulsen's testimony lacks any degree of clarity as to when he saw the defendant's truck. He testified that he was unable to stop and smashed into the truck when its rear wheels were six feet beyond the center line of the intersection. These facts being true, the defendant was not in the commission of an unlawful act at the time of the collision.

It is true, as held in Benton v. State, *supra,* where a defendant is negligent, the contributory negligence of the driver of the car in which deceased was riding, even if it were imputable to the deceased, is no defense in a criminal prosecution. See, also, Thiede v. State, 106 Neb. 48, 182 N. W. 570; Schultz v. State, *supra.*

The evidence failing to show that the defendant was in the commission of an unlawful act, or negligent, at the time of the collision, makes the foregoing rule inapplicable.

In Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651, quoting from Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766, this court held: "The physical facts are sufficient to bar a recovery for negligence only when they indisputably demonstrate that the collision out of which the cause of action arose was not caused by the party charged." The foregoing constitutes the rule in civil cases, and the rule would be no different in a criminal case.

We believe that the physical facts in the instant case

undisputably demonstrate that the collision out of which this charge of manslaughter arose was not caused by any violation of the law on the part of the defendant. This being true, he would not be guilty of manslaughter.

In Severin v. State, 146 Neb. 506, 20 N. W. 2d 377, this court held that it would not interfere with a verdict of guilty in a criminal case which was based upon conflicting evidence unless it was so lacking in probative force that the court could say as a matter of law that it was insufficient to support a finding of guilt beyond a reasonable doubt. See, also, Williams v. State, 115 Neb. 277, 212 N. W. 606; Buckley v. State, 131 Neb. 752, 269 N. W. 892.

We conclude that the evidence in the instant case is so lacking in probative force that as a matter of law it is insufficient to support a finding of guilt beyond a reasonable doubt. The evidence does not show that the defendant was in the commission of an unlawful act at the time of the collision.

For the reasons given herein, the judgment is reversed and the cause remanded with directions to discharge the defendant and dismiss the case.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., dissenting.