HAROLD R. SCHLUTER, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

44 N. W. 2d 588

Filed November 10, 1950. No. 32779.

*Bernard J. Boyle* and *Hugh J. Boyle,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, *Walter E. Nolte,* and *Henry M. Grether,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Harold R. Schluter, defendant and plaintiff in error, was convicted of the crime of manslaughter and was adjudged to be confined in the Nebraska State Reformatory. He, by these proceedings, seeks to have the conviction and sentence reversed.

The information alleged that on the 11th day of October 1947, defendant in Douglas County, Nebraska, did

unlawfully and feloniously, but without malice, kill Freddie Freelin; and that the unlawful acts of defendant which caused the death of deceased were the operation of his motor vehicle while under the influence of intoxicating liquor, its operation at a high, dangerous, and reckless speed, not proper under the circumstances, viz 60 miles an hour, and its operation on the wrong side of the highway.

Defendant at about 10:30 p. m. on the date alleged, riding in and operating his automobile, left Hummel Park in Omaha and drove south on the street known as River Road. A wagon equipped with a hayrack was then being driven north on the road. There were on it a driver and about thirty Omaha University students. It was stopped on the right or east side of the road, and some of the riders got off and were standing near the wagon. The defendant approached from the north, and when near the front of the wagon suddenly swerved his car to the east, the left front fender of it struck the left hand or west front corner of the hayrack, and then it proceeded down the road a considerable distance. Freddie Freelin was a member of the party who had been riding on the hayrack. He was injured in the collision and died as a result of his injuries. His body was found about 36 feet to the rear of the hayrack near the center of the road. Insufficiency of the evidence received on the trial to sustain the verdict is not discussed except in the respects and to the extent subsequently indicated. The evidence will not be summarized, but mention of such parts of it as are deemed necessary will be made in the consideration of the assignments of error made and discussed by the defendant.

The State at the trial examined as witnesses LeRoy Wilson, Mary Lou Saxton, Anola Saxton Wheeler, and Robert Boettger. They were not willing witnesses. The State claimed they each testified differently on matters pertaining to the issues involved than they did at the first trial. Schluter v. State, 151 Neb. 284, 37 N. W.

2d 396. The State, for the purpose of impeachment of them, offered, and the court received, evidence of their previous testimony that conflicted with and contradicted part of their testimony on this trial. Defendant, by request timely made, asked the court to advise the jury that the State had offered evidence tending to impeach certain of its witnesses, and that if the jury found from the evidence that the witnesses were impeached, then it should disregard all of the evidence of such witnesses relating to the matters concerning which they had been impeached. The refusal of the court to instruct in accordance with this request is one of the errors assigned by defendant. The instruction proposed by the defendant did not correctly state any rule of law. Evidence tending to show that a person made, before becoming a witness in a case, statements inconsistent with and contrary to his testimony as a witness on the trial thereof, does not dispose of his testimony as to the matters involved. It constitutes a part of the evidence in the case to be weighed and considered in the determination thereof. Proof of contradictory statements of a witness is received not as evidence of the facts declared, unless made against interest by one who is a party to the record, but for the purpose only of aiding the jury in estimating the credibility of the witness. This is clearly stated in Zimmerman v. Kearney County Bank, 59 Neb. 23, 80 N. W. 54: "A witness may be impeached by showing that he made statements out of court contrary to those made in court in regard to some matters relevant to the issue. * * * Such declarations are not substantive evidence of the fact declared, unless made against interest by one who is a party to the record. * * * Such declarations are received to aid the court or the jury in estimating the character and credibility of the witness." This has frequently been approved as the rule in this jurisdiction. Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145; Bernhardt v. Chicago, B. & Q. R. R. Co., 132 Neb. 346, 272 N. W. 209, 302 U. S. 685, 82 L. Ed.

529, 58 S. Ct. 34; Mantell v. State, 141 Neb. 15, 2 N. W. 2d 586; Costello v. Hild, 152 Neb. 1, 40 N. W. 2d 228. The correctness of the instruction given to the jury on the subject of impeachment of witnesses is not challenged by defendant in the assignments of error and may not be considered. Exchange Elevator Company v. Marshall, 147 Neb. 48, 22 N. W. 2d 403.

The failure of the court to advise the jury as proposed by defendant to the effect that before the jury could convict him it must find from the evidence beyond a reasonable doubt that at the time the deceased came to his death "the defendant was guilty of such gross negligence as to indicate a wanton disregard of human life" is challenged as being prejudicial to the defendant. This introduced an element not heretofore recognized in this state as a prerequisite for conviction of the crime of manslaughter. The offense is, so far as applicable here, defined by statute (§ 28-403, R. R. S. 1943) as follows: "Whoever shall unlawfully kill another without malice, * * * unintentionally, while the slayer is in the commission of some unlawful act, shall be deemed guilty of manslaughter." The operation of motor vehicles is governed by many legal restrictions and requirements which are designed and intended to secure reasonable safety of persons upon the highways of the state. They were adopted because experience had established that a disregard thereof was likely to result in serious bodily harm or death. It has been considered in this state that a negligent violation of any of these by the operator of a motor vehicle on a public highway directly resulting in death of another person may render the operator guilty of manslaughter. In Benton v. State, 124 Neb. 485, 247 N. W. 21, it is said: "When one drives an automobile in violation of law pertaining to the operation of such vehicles on the public highway and in so doing, as a result of the violation of law, causes death to another, he is guilty of manslaughter." This has been approved in later cases. Puckett v. State, 144 Neb. 876,

15 N. W. 2d 63; Fielder v. State, 150 Neb. 80, 33 N. W. 2d 451; Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873. There is much agreement in the decisions of the courts that if a person negligently and carelessly operates a motor vehicle in violation of law, and death of another results from the negligent operation, the operator is guilty of manslaughter. State v. Sudderth, 184 N. C. 753, 114 S. E. 828, 27 A. L. R. 1180; Annotations, 16 A. L. R. 914, 30 A. L. R. 66. The argument of defendant in this regard is based on one sentence of an instruction segregated from the balance thereof and from all of the remainder of the charge of the court to the jury. The sentence challenged is: "That the defendant unintentionally while in the commission of such unlawful acts charged, or any one thereof, and as a result thereof, unlawfully and feloniously but without malice did kill and slay Freddie Freelin." Instructions must be considered as a whole in determining whether a particular instruction or a part thereof is prejudicial. Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217. The defendant has taken a portion of an instruction and in considering it out of context has attached to it a different meaning than when read and considered in context. The view urged proceeds from the incorrect belief that the instructions make the crime of manslaughter for any death that resulted from any violation of any law regardless of the circumstances. They are not properly subject to this construction and understanding. The instructions embrace the following: One was in substance a recitation of the information which charged manslaughter in the language of and in the form permitted by statute, and included the three unlawful acts attributed to defendant at the time of the accident in which Freddie Freelin, deceased named in the information, received injuries resulting in his death, to wit: operating his motor vehicle while under the influence of intoxicating liquor; operating it at a high, dangerous, and reckless rate of speed, not proper under the existing circumstances, at

60 miles an hour; and operating it on the wrong side of the highway. Another instruction specified the material allegations and elements which the State was required to establish by evidence beyond a reasonable doubt before the jury could find the defendant guilty. These allegations were that the defendant did "commit the unlawful acts or any one thereof charged in the Information" and that "the defendant unintentionally while in the commission of such unlawful acts charged, or any one thereof, * * * did kill * * * Freddie Freelin." This was followed by a statement that if the jury did not find that the State had established both of the propositions stated beyond a reasonable doubt, then it should acquit the defendant. Instructions were given containing statements as to the law of Nebraska that it is unlawful to operate a motor vehicle while under the influence of alcoholic liquor and that the driver shall operate his vehicle upon the right half of the highway unless it is impracticable to do so. An instruction was given that, under a city ordinance, the maximum rate of speed within the area in which the accident took place was 35 miles an hour. An instruction also stated that where one operating a motor vehicle is confronted suddenly with an emergency not created by his conduct and is required to act quickly, the law only requires him to conduct himself as an ordinary, careful, and prudent person would have done under similar circumstances, and if he does that he is not held to be in the commission of an unlawful act even though he was guilty of an error of judgment.

The argument of defendant is premised on the rationale that the instructions given the jury would make any kind of violation of law manslaughter if a death resulted. They do not, when considered as a whole, convey such an idea. They limit the unlawful acts to the particular ones specified in the information by the use of the words "such unlawful acts charged" and not to any unlawful act, as contended by defendant. He

was favored with greater protection than the law required because it was not necessary for the State to specify the unlawful acts with which he was charged.

The charge against defendant was substantially in the words of the manslaughter statute, except that three unlawful acts attributed to him were specified as previously stated. The information charged but one offense —manslaughter, but it did also the unnecessary additional thing of setting out the unlawful acts the State claimed the defendant was guilty of at the time the deceased received the injuries which resulted in his death. The court denied the request of defendant timely made and sufficiently maintained to have the jury, in the event of a verdict of guilty, disclose the unlawful act or acts charged against defendant upon which the verdict was based. The claim of error and prejudice because of this is not well founded. It fails to distinguish between charging a person with separate offenses in one information, and rendering one general verdict on the separate offenses, and the situation in this case where only one offense is alleged in the information but there are several unlawful acts stated as one of the elements of that offense. The statement of the claimed unlawful acts of defendant was in substance a bill of particulars which limited the State and furnished defendant advance information to which he was not legally entitled. The crime was sufficiently stated in the language of the statute, and the additional allegations might have been properly rejected and stricken as surplusage. Frank v. State, 150 Neb. 745, 35 N. W. 2d 816. The determination made in a recent case is decisive of this contention: "* * * the state was not required to either specifically charge in the information or thereafter elect, as moved and argued by defendant, upon what violation of law the prosecution was based or it sought to obtain a conviction." Vaca v. State, *supra*.

The information identified one of the unlawful acts of defendant claimed to have caused the death of the

deceased as driving at the high, dangerous, and reckless rate of speed of 60 miles an hour, an improper speed under the existing circumstances. The State produced, and there was received in evidence, an ordinance of the city of Omaha. It prohibits the operation of a vehicle in the area important to this case at a rate of speed greater than is reasonable and prudent, having due regard for the traffic, surface, width, and condition of the road, or at a rate of speed such as to endanger life or limb of any person, or at more than 35 miles an hour. The contents thereof was the subject matter of one of the instructions to the jury. Defendant asserts this was error and that before he could be convicted in this case the State must prove and the jury must find beyond a reasonable doubt that he was operating his automobile at a speed of not less than 60 miles an hour, as alleged in the information. When a person drives a vehicle upon a public thoroughfare at a speed greater than is reasonable and prudent, and in excess of a speed allowed by law for that location, and death of another is caused as a result of the violation, the driver of the vehicle is guilty of manslaughter. The State is not required to show the precise and exact speed of the vehicle, but it is sufficient if it proves that it was in excess of the legal rate, contrary to the law pertaining to the operation of it within the territory embracing the place where the unlawful act took place, and death was caused by the unlawful act. Defendant was accused of operating his car at 60 miles an hour, an improper speed under the existing conditions. This allegation was only a particular, and the essential element was that defendant committed an unlawful act which would sustain a conviction of manslaughter. The point involved with respect to the offense charged in the information is not that the defendant was traveling 60 miles an hour, but that he was going faster than the applicable rate or a proper rate of speed. It was not material whether or not he was proceeding at 60 miles an hour since any rate of speed

faster than a lawful rate sustained the alleged violation in that regard. The essence of the matter raised by this argument of defendant is, what must the State establish to warrant a conviction of manslaughter. The question as to the alleged wrongful act of speed is whether or not defendant was driving his car at an unlawful and excessive speed under the existing circumstances. Some of these were: That there was an applicable ordinance of the city of Omaha restricting speed to not more than 35 miles an hour; that it was in the nighttime; that defendant had indulged in intoxicating beverage; and he was to some extent under the influence thereof. The ordinance was some evidence of the fact sought to be established by the State. Such an ordinance is competent evidence in a civil case for damages grounded on alleged negligence of the defendant, in the absence of allegation of its existence, if the averment of negligence is general. Omaha Street Ry. Co. v. Larson, 70 Neb. 591, 97 N. W. 824; Carter v. Zdan, 151 Neb. 185, 36 N. W. 2d 781. It must logically follow that such an ordinance is competent evidence to be received and considered in support of an alleged wrongful act of speeding involved in a manslaughter charge in which the manner and means by which the death was caused is not an essential element. Vaca v. State, *supra*. A speed in excess of the restrictions of the ordinance may have been excessive, reckless, and grossly negligent. What is a reasonable or an excessive and reckless rate of speed usually depends upon the situation and circumstances. A speed safe, reasonable, and proper in some places and under some circumstances may be highly dangerous and improper in another place where a different situation exists. Proper speed under certain conditions may be excessive under others, and a proper speed in the daytime may be reckless and improper at night. Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499.

It is said that the evidence introduced by the State against objections of defendant as to the speed a motor

vehicle was operated by him at the time of the accident was improperly received because of the absence of proper foundation, and that there is no competent evidence to sustain the charge of unlawful speed. Witnesses estimated that the automobile of defendant was traveling from 50 to 60 miles an hour. The foundation for this was proper. It was shown that they had operated motor vehicles from two to five years, had observed the speedometer with reference to passing objects, and from their experience could judge the speed of a moving automobile. One witness saw and watched the car for two blocks as it approached, and noted the roar of the motor. The attention of another was directed to the car by its noise, and he observed it while it traveled about two blocks toward the place of the collision. There was testimony of other witnesses for the State of like character. There was no mistake in receiving this evidence. In In re Estate of Potts, 144 Neb. 729, 14 N. W. 2d 323, it is said: "Ordinarily the speed of an automobile is not a matter of exclusive expert knowledge and any one who has knowledge of time and distance and a reasonable opportunity to formulate a basis for an opinion is a competent witness to give an estimate of speed. * * * A witness who has shown himself qualified to give such an opinion as to the speed of a moving car may do so even though it appears that the car was coming directly toward him and that his view was partially blocked. Such facts go to the weight and not the competency of the evidence." This rule has been approved and applied in recent cases. Koutsky v. Grabowski, 150 Neb. 508, 34 N. W. 2d 893; Kraft v. Wert, 150 Neb. 719, 35 N. W. 2d 786. It is specifically urged that the rule is not applicable in this case because the accident in question occurred in the nighttime and the observations made by the witnesses were while the vehicle was moving directly toward them. These facts do not establish an exception to the rule. Patterson v. Kerr, 127 Neb. 73, 254 N. W. 704.

The problem is presented whether or not there was any competent evidence that defendant was under the influence of intoxicating liquor at the time of the collision involved in this case. The alleged defect is lack of foundation for the testimony produced by the prosecution and admitted by the court. Defendant had been drinking during the evening. He and three associates drank an entire case and all of a second case of beer except seven bottles. He admits consuming from nine to eleven bottles of beer, had a buzz, was kind of dizzy, became quarrelsome, wanted to fight, broke the glass of the windshield of his car with his fist, and broke the glass in one of the headlights of his car while it was parked at Hummel Park. The persons who went with him in his car to the park declined to accompany him on the return trip. One of them took the key from the ignition switch in an attempt to prevent him from driving his car. The young lady who was his date and who had been in his company before refrained from accompanying him back to the city because of his condition. As he came down the road immediately before the accident he was feeling the beer but did not think he fell asleep "at the wheel" but he was then dizzy. His associates who had been with him during the evening and the officers who saw him after the accident stated in detail what they observed and experienced in reference to the defendant, his manner of speech, and conduct, and expressed the opinion that he was intoxicated. It was testified that he was unsteady on his feet, his walk was unusual, he staggered along, his speech was thick, faulty, and not clear, and he had the odor of liquor on his breath. This evidence was competent and sufficient to sustain a finding of the jury that he was at the time important to this case under the influence of intoxicating liquor. In Howard v. State, 109 Neb. 817, 192 N. W. 505, it is said: "The rule, as deduced from the weight of authority, is that a witness may testify, from observation, whether a person

was intoxicated. Intoxication is a fact which a witness may ascertain in the same manner in which he ascertains other facts. He may give the details and then may state the ultimate fact of intoxication as derived from observation." See, also, Rhodes v. State, 124 Neb. 147, 245 N. W. 402; Annotations, 42 A. L. R. 1506, 68 A. L. R. 1362.

The defendant has assigned but has not discussed other errors. They are considered waived and will not be examined by this court. Owens v. State, 152 Neb. 841, 43 N. W. 2d 168.

The judgment of the district court should be, and is, affirmed.

AFFIRMED.